SETH YOHALEM (*pro hac vice* to be applied for)
WASKOWSKI JOHNSON YOHALEM LLP
954 West Washington Boulevard, Suite 322
Chicago, Illinois  60607-2224
Telephone:   (312) 278-3153
Facsimile:    (312) 690-4641
Email:          syohalem@wjylegal.com

JASON M. WUCETICH (STATE BAR NO. 222113)
jason@wukolaw.com
DIMITRIOS V. KOROVILAS (STATE BAR NO. 247230)
dimitri@wukolaw.com
WUCETICH & KOROVILAS LLP
222 N. Pacific Coast Highway, Suite 2000
El Segundo, CA 90245
Telephone:   (310) 335-2001
Facsimile:    (310) 364-5201

Attorneys for Plaintiff
CHRISTIAN TETRAULT

# UNITED STATES DISTRICT COURT FOR

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTIAN TETRAULT,<br><br>        Plaintiff,<br><br>    v.<br><br>CAPITAL GROUP COMPANIES GLOBAL, THE CAPITAL GROUP COMPANIES, INC., and DOES 1 to 10, inclusive,<br><br>        Defendants. | **CASE NO.:**<br><br>**COMPLAINT FOR:**<br><br>**(1) Retaliation in violation of FEHA;**<br>**(2) Discrimination in violation of FEHA;**<br>**(3) Breach of Contract;**<br>**(4) Promissory Estoppel;**<br>**(5) Wrongful Termination in Violation of Public Policy;**<br>**(6) Wrongful Termination in Violation of Labor Code § 1102.5**<br><br>**JURY TRIAL DEMANDED** |

## REDACTED VERSION OF DOCUMENT
## PROPOSED TO BE FILE UNDER SEAL

[3344084.1]

Plaintiff Christian Tétrault ("Plaintiff"), by and through his attorneys, Waskowski Johnson Yohalem LLP and Wucetich & Korovilas LLP, hereby complains and alleges as follows against Defendants Capital Group Companies Global, The Capital Group Companies, Inc. and Does 1-10 (Capital Group Companies Global, The Capital Group Companies, Inc. and Does 1-10 shall be referred to collectively as "Capital Group"):

## **INTRODUCTION**

1.     This case seeks to hold Capital Group to the diversity, equity and inclusion ("DEI") ideals it purports to espouse.  Capital Group claims that it categorically prohibits discrimination based on national origin.  Capital Group also purports to encourage its employees to bring any concerns regarding discrimination to its management's attention, promising that employees will not be retaliated against for doing so.  However, as Plaintiff would learn, Capital Group does not genuinely oppose discrimination or want employees to raise concerns. Capital Group's DEI promises are merely cover for a corporation all too willing to turn a blind eye to discrimination in order to protect its senior leaders.

2.     When Plaintiff complained about national origin discrimination, Capital Group did not take his complaints seriously.  When Plaintiff maintained that he was the victim of discrimination, Capital Group fired him.

3.     Capital Group explicitly told Plaintiff that it fired him because he did not accept the results of its "investigation" dismissing his concerns.

4.     Plaintiff is a niche expert on international taxation matters who excelled at work and consistently received an "Outstanding" ranking from Capital Group for each of the last seven years of his employment. In 2019, Capital Group significantly expanded Plaintiff's job responsibilities. A senior business leader at Capital Group told Plaintiff that Plaintiff was effectively Capital Group's "Director

of International Tax" and that Plaintiff should expect a promotion commensurate with his increased responsibilities at his next annual review.

5.     Plaintiff, who is French-Canadian, speaks English fluently but with a distinctive foreign accent.  Plaintiff's direct supervisor at that time, Thomas Condon, Capital Group's Head of Tax and Treasury, was biased against non-Americans, including Plaintiff. Condon at times criticized and made fun of Plaintiff's accent, called foreign countries "weird" and "backwards," cut Plaintiff off or belittled him in meetings, subjected Plaintiff to various other indignities and intimidations, and invited Plaintiff to look for a job elsewhere on three separate occasions, even while Capital Group as an institution acknowledged that Plaintiff performed his job excellently.

6.     Notwithstanding Capital Group's promises, Capital Group did not promote Plaintiff to a Director-level position at his next annual review in April 2020.  Capital Group told Plaintiff to wait until the following year.  Then, Capital Group again did not promote Plaintiff in April 2021, despite continuing to rate his work as "Outstanding."

7.     Capital  Group 

8.     For years, Plaintiff had put up with Condon's biases and intimidation and tried to focus on his career.   However, when Capital Group repeatedly encouraged its employees to speak up about discrimination, Plaintiff did just that. Plaintiff sent a detailed letter to Capital Group's Chief Financial Officer explaining

Capital Group's failure to promote him to a position commensurate with his increased responsibilities, apparently because of Condon's biases.   In response, Capital Group conducted an unobjective and inadequate investigation where it met with Plaintiff a single time, did not allow Plaintiff to respond to Condon's excuses, took Condon's claims at face value, and concluded no wrongdoing had occurred. Capital Group told Plaintiff not to raise the issue again.

9.    ██████████ ███ ██████ ████ ██ ████████ ██ ████████ █ ████████ ████ █ ██ ████████ ██ ████ ████ ███ █ █ ████ ██████ ██████ ██████ █████ ██ ██████ ████████████████ Capital Group promised categorically that it would not punish anyone for speaking up about discrimination or other concerns.

10.    In response, on his year-end self-assessment, Plaintiff expressed his disappointment with Capital Group's investigation.  Capital Group struck this from his self-assessment.

11.    Capital Group's Chairman, Robert Lovelace, sent an email ████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████ ██ █████ ████ ██ ████ █████ █████ █████ ██ ███ ██ ████ ████████████████████████████████████████ ████████████████████████████████████████████ Plaintiff reported his concerns to the highest level of senior management who issued this call to action.  In response, Capital Group conducted another inadequate investigation in which it never seriously considered Plaintiff's concerns or the deficiencies in its original investigation and issued a one-and-a-half-page memorandum dismissing Plaintiff's concerns without addressing the evidence presented by Plaintiff.

COMPLAINT

13.     When Plaintiff maintained that he still believed he was the victim of discrimination and intimidation, Capital Group fired him, explicitly because he did not accept the results of Capital Group's "investigation."    Capital Group acknowledged its termination had nothing to do with Plaintiff's work performance, which it deemed outstanding.

14.     At all times, Plaintiff raised his concerns about national origin discrimination through the proper channels in a respectful manner that did not disrupt Capital Group's business.

15.     Capital Group claims that it was permitted to fire Plaintiff for complaining about discrimination because Plaintiff, who was based in Geneva, Switzerland, is beyond the protections of California's non-discrimination laws.

16.     Not so.  Capital Group's senior management (including Condon and the individuals to whom Plaintiff raised his concerns), the individuals who purported to investigate Plaintiff's complaints, and the individuals who fired Plaintiff, are all based in California and made the relevant decisions and engaged in the relevant conduct in California.  Moreover, Plaintiff oversaw three teams of workers, two of which were based in California.  Plaintiff reported directly to Capital Group management in California, travelled to California for work for extended periods of time, and engaged with California on a near daily basis.

17.     In addition, Capital Group is contractually bound to provide the protections set forth in Plaintiff's employment agreement, which incorporated the non-discrimination and non-retaliation promises Capital Group made to its employees in its handbook.

18.     Plaintiff had his career derailed by Capital Group's wrongful conduct. Unemployed, Plaintiff's job and pay prospects are limited by the fact that he is over 50 years of age and in a specialized field.

19.     Accordingly, Plaintiff brings causes of action for: (1) retaliation in

violation of the California Fair Employment and Housing Act ("FEHA"), California Government Code, § 12900 *et seq*.; (2) discrimination in violation of FEHA; (3) breach of contract; (4) promissory estoppel; (5) wrongful termination in violation of public policy; and (6) wrongful termination in violation of Labor Code § 1102.5.

## **PARTIES**

20.    Plaintiff CHRISTIAN TÉTRAULT is a Canadian citizen who is currently domiciled in Switzerland.

21.    Defendant CAPITAL GROUP COMPANIES GLOBAL is a California corporation with its primary place of business located in Los Angeles, California.

22.    Defendant THE CAPITAL GROUP COMPANIES, INC. is a Delaware corporation with its primary place of business located in Los Angeles, California.

23.    Plaintiff does not know the true names and capacities of those Defendants sued herein as DOES 1 through 10, inclusive, and therefore sues those Defendants by such fictitious names.

24.    Plaintiff will amend this Complaint to allege the true names and capacities of the Defendants sued herein as DOES 1 through 10 whenever they are ascertained.

25.    Plaintiff is informed and believes, and on that basis alleges, that each of the Defendants sued herein as DOES 1 through 10, inclusive, is in some manner legally responsible for the wrongful acts and/or omissions alleged herein.

26.    Plaintiff is informed and believes, and on that basis alleges, that each of the Defendants acted in concert with each and every other Defendant, intended to and did participate in the events, acts, practices and courses of conduct alleged herein, and proximately caused damage and injury thereby to Plaintiff as alleged herein.

27.    At all times herein mentioned, each of Defendants, including DOES 1-

10, were agents, employees, supervisors, employers, alter egos, and/or joint venturers of these Defendants, and were acting both individually and in the course and scope of such relationship, and/or as integrated enterprises and/or joint employers, with knowledge and/or consent of the remaining Defendants.

## JURISDICTION AND VENUE

28.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000.

29.    Venue is proper under 28 U.S.C. § 1391 because Capital Group's principal place of business is within this judicial district.

## FACTS

I.    **Plaintiff's Cross-Border Work for Capital Group**

30.    Plaintiff had a long history of success in international taxation matters.

31.    In 2010, Plaintiff left his employment at Deloitte and began working at Capital Group in its Irvine, California office as a Senior Tax Manager, working under Thomas Condon, Capital Group's Head of Tax and Treasury.

32.    Capital Group is a large financial services company based in Los Angeles, California with offices all over the world and with over $2.6 trillion of assets under its management.  Capital Group operates a series of subsidiaries and related entities that nonetheless are managed centrally from its California offices and operate as effectively one unit, with the same website, email system, internal guidelines, and corporate hierarchy.

33.    The entity formally employing Plaintiff when he was first hired by Capital Group was "Capital International, Inc.," a California corporation and a subsidiary of The Capital Group Companies, Inc.

34.    Plaintiff worked successfully for Capital Group out of its Irvine,

COMPLAINT

California office for several years, receiving numerous positive reviews.

35.    In 2017, Capital Group transferred Plaintiff to one of its foreign entities, Capital International Sárl, and transferred Plaintiff to Geneva, Switzerland. (2017 Employment Agreement, Ex. 1.)

36.    Plaintiff continued to have success working for Capital Group in Geneva and continued to receive positive year-end reviews from Capital Group.

37.    In 2019, Capital Group reorganized and shifted Plaintiff's formal employer to a different subsidiary, "Capital Group Companies Global" while Plaintiff remained in the Geneva office.  Capital Group Companies Global is a California corporation.

38.    At the time of the reorganization, despite the change in formal employer, ███████████████████████████████████ ███████████████████████████████████████, Ex. 2.)

39.    Throughout his time working in Geneva, Plaintiff reported to supervisors in California and interacted with Capital Group employees in California on a near daily basis.

40.    From 2019, Plaintiff oversaw three teams of employees, two of which were based in California.

41.    Up until the pandemic, Plaintiff took several extended work trips annually to California.

42.    Plaintiff's direct supervisors were based in California and the majority of Capital Group senior managers with whom Plaintiff interacted were physically located within California when Plaintiff communicated with them.

COMPLAINT

## II.    Thomas Condon's Bias Against Foreign Nationals Prevents Plaintiff's Promotion

43.    From 2010 until 2020, Plaintiff mostly worked under Thomas Condon, a Senior Vice President at Capital Group and Capital Group's Head of Tax and Treasury.    In 2020, Plaintiff began reporting to Jeff Sterner, a long-time close colleague of Condon's, who, in turn, reported to Condon.  Both Sterner and Condon were based in California.

44.    Over the years, Condon made negative comments about Plaintiff's accent along with other non-American workers.  Plaintiff recalls that at one point, Condon compared Plaintiff to contractors from India working in the California office, telling Plaintiff "your accent is not as bad as contractors in the IT group."

45.    Condon also made negative comments about foreign countries, including calling them "weird" and "backwards" on several occasions.

46.    In 2019, Canise Arredondo was named Capital Group's new Chief Financial Officer. Condon reacted negatively to Arredondo's promotion.    On multiple occasions, Condon told Plaintiff that Condon could never be considered for the position because Condon was male. Condon claimed Arredondo "does not know anything" and expressed his frustration at having to report to her because "they needed a woman for the role."

47.    Plaintiff's relationship with Condon became increasingly strained after Arredondo's promotion appeared to make Condon unhappy and bitter.

48.    Condon was hostile and condescending when Plaintiff presented ideas in meetings.  Condon belittled Plaintiff, saying things such as "I am not sure I understand, but I don't need to hear it" in an apparent reference to Plaintiff's accent. Although Plaintiff speaks with a distinctive foreign accent, his accent is not difficult to understand.

49.    When, in 2019, Plaintiff shifted to Capital Group Companies Global,

Capital Group increased Plaintiff's responsibilities and added two teams under his supervision.

50.     A senior business leader of Capital Group located in the Geneva office, Francois Note, told Plaintiff that the change in responsibilities was a great honor, that it was exciting to see such a senior, global and strategic role being located in Geneva instead of the United States as would normally be the case, that this development raised the profile of the Geneva office within the organization, and that Plaintiff's new role was tantamount to a Director-level position.

51.     Note further told Plaintiff that Plaintiff was essentially the "Director of International Tax" for Capital Group.  Several of Plaintiff's other colleagues also passed along their congratulations over the apparent promotion.

52.     However, Condon refused to recognize the promotion and continued to belittle and dismiss the breadth of Plaintiff's work and the value Plaintiff's work created for Capital Group.

53.     Asked twice by Plaintiff, Condon also refused to write a role description for Plaintiff's new role and expanded responsibilities.

54.     When Plaintiff proposed a novel strategic idea to him for Capital Group, Condon froze Plaintiff out of the discussions.  Condon excluded Plaintiff from other discussions that directly pertained to his area of responsibilities or expertise.

55.     Note told Plaintiff not to worry, stating "if this is not a promotion, I wonder what is." Note told Plaintiff to be patient and that after Plaintiff served in his new role for a year, Plaintiff should expect the promotion to be recognized and reflected at his next review in spring of 2020.

56.     However, despite being reviewed as "Outstanding" at his annual review in April 2020 and successfully managing the three teams, Plaintiff was not actually promoted to a Director-level position in recognition for his expanded

responsibilities, as Note had promised.  Instead, Capital Group told Plaintiff to wait until the following year.

57.    Then, in April 2021, Capital Group again did not promote Plaintiff, despite his continued excellent management of the increase in responsibilities, and despite Capital Group again rating Plaintiff's work as "Outstanding."

58.    On three separate occasions, notwithstanding the "Outstanding" rankings at his annual reviews from Capital Group as a whole, Condon invited Plaintiff to leave the company and look elsewhere for other employment.

59.    Thus, by all appearances, Condon's personal biases against foreign-born employees, including Plaintiff, were preventing Plaintiff from receiving the formal promotion that Note previously told him would be forthcoming.

### III.    <u>Capital Group's Non-Discrimination and Non-Retaliation Promises</u>

60.    Although Capital Group had always paid lip service to being opposed to discrimination and retaliation, Capital Group recognized it had an ongoing problem where victims of discrimination and other concerns were afraid to speak up.  Capital Group purported to take steps to address this problem.

61.    On July 7, 2020, Capital Group's CEO, Timothy Armour, ███████

62.    Capital Group mandated several DEI training programs, including hiring outside consultants and speakers.

63.    Consistent with these company-wide messages, Capital Group promulgated formal policies which encouraged employees who felt they were victims of discrimination to speak up.

64.    For example, ███████████████████ It also claimed:



65.    Capital Group promulgated and distributed

(Ex. 4.)

COMPLAINT

67. Capital Group also made its promises of non-discrimination and non-retaliation in its United States and European Associate Handbooks:

- ██████████████████████████████████████
  ███████████████████████████
- ██ ███ ████ ██████ ███████ ██████ ███ ██████ ██████ ███████
  ████████████████████████████████████████
  ██████████████████████████████████████
██ ██████████████████████████████████████
  ████████████████████████████████████████
  ████████████████████████
██ ████████████████████████████████████████
  ████████████████████████████████████████
  ████████████████████████████████████████
  ████████████████████████████████████████
  ████████████████████
██ ██ ███ ██ ███ ████ ██████ ██████ ██ ██ ████ ██ ██████
  ████████████████████████████████████████
  ████████████████████████████████████████
  ████████████████████
██ ████████████████████████████████████████
  ████████████████████████████████████████
  ████████████████████████████████████████
  ████████████████████████████████████████

68. In turn, Plaintiff's employment agreements with Capital Group incorporated Capital Group's Associate Handbooks.

69. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

70. █████████████████████████████████████████████████████████████████████████████████████████████

71. Accordingly, Plaintiff and Capital Group agreed that Plaintiff's employment would be governed by Capital Group's Associate Handbooks, including the non-discrimination and non-retaliation provisions contained therein.

## IV.    Plaintiff Raises Concerns About Discrimination In Good Faith

72. In response to Armour's video message imploring Capital Group employees to speak up about discrimination, Capital Group's series of DEI presentations, and Capital Group's repeated statements that employees could raise any good faith concerns about discrimination without fear of retaliation, ████████████████████████████████████████████████████████████████████████████████████████████

73. Arredondo was based in California.

74. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

14

COMPLAINT

███████████████████████████████████████████

███████████████

(5/20/2021 Letter, Ex. 7.)

75.    Capital Group purported to take Plaintiff's concerns seriously.

76.    In response to Plaintiff's letter, Capital Group assigned Bob Ritter, a member of its Human Resources department, who was also based in California, to investigate the matter and assured Plaintiff that he would face no retaliation for raising the concern.

77.    However, Ritter met with Plaintiff only a single time, online, on May 26, 2021.

78.    At the meeting, Plaintiff provided an explanation of his concerns. Plaintiff expressed his belief that he was the victim of national origin discrimination, because of his non-American and non-native English-speaking background.

79.    Plaintiff further explained to Ritter that Condon had disparaged foreign countries, calling them "weird" and "backwards," generally opposed Plaintiff's advancement within Capital Group, suggested that Plaintiff should leave Capital Group on three separate occasions, and engaged in numerous other instances of intimidating conduct over the years.

80.    After their initial meeting, Ritter never had any follow up questions for Plaintiff.

81.    On June 17, 2021, Ritter and Arredondo conducted an online meeting with Plaintiff, in which they participated from California.  Arredondo and Ritter presented a report issued by Ritter that concluded Condon had engaged in no wrongdoing.  Capital Group did not give Plaintiff the opportunity to review the report before the meeting.

82.    ████████████████████████████████████

██████████████████████████████████████████

COMPLAINT

83.    Between his first meeting with Plaintiff and issuing the final report, Ritter did not substantively communicate at all with Plaintiff.  Ritter did not keep Plaintiff apprised of the investigation, give Plaintiff an opportunity to address Condon's explanations and excuses, or ask Plaintiff to provide additional context to Plaintiff's belief that he was the victim of national origin discrimination. Ritter's failure to take these rudimentary investigatory steps contradicted the representations made in the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ which promised that Capital Group would ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. 4, at 5, 7.)

84.    Ritter and Arredondo also did not provide Plaintiff with an opportunity to address any of the findings of the report at the meeting or afterwards, as the report was presented to Plaintiff as final.

85.    At the meeting, while forced to read the report for the first time in front of Arredondo and Ritter, Plaintiff expressed his disappointment with the findings of the report and with the process that led to Capital Group dismissing his concerns

without giving him the opportunity to respond to Condon's claims that were taken at face value.

86.    Arredondo and Ritter told Plaintiff that the matter was closed and that he should not raise the issue again.

### V.    Plaintiff Follows Capital Group's Continued Encouragement To Raise Concerns About Discrimination

87.    ███████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
███████████

88.    ████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████

89.    Capital Group again sent DEI messages encouraging its employees to raise their concerns.

90.    At the end of 2021, Capital Group required Plaintiff to submit a candid year-end self-assessment regarding his employment.

91.    As part of his self-assessment, Plaintiff expressed his disappointment in the manner Capital Group handled his complaint about national origin discrimination, writing:

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
███████ ██████ ██████ ███████ ██████ █████ ██████ ████████
████████████████████████████████████████████████

1

2

3

4

5

6     92.    In response, on February 3, 2022, Ritter conducted a videoconference

7 with Plaintiff with minimal notice, in which he told Plaintiff that Capital Group

8 would be striking this portion of Plaintiff's self-assessment.  Plaintiff stated that he

9 objected to Capital Group striking this portion of his self-assessment.

10     93.    Ritter and Plaintiff had a further exchange in which Plaintiff confirmed

11 that he:

12

13

14

15

16 ████████████████ Ex. 10, at 3.)

17     94.    On February 16, 2022, Ritter notified Plaintiff that Capital Group

18 would nonetheless be striking the portion of the self-assessment that dealt with

19 Plaintiff's complaint of discrimination and the inappropriate investigation that

20 followed, although Capital Group stated it would keep it elsewhere in Plaintiff's file.

21     95.    While Ritter was striking Plaintiff's complaints about Capital Group's

22 handling of his discrimination claims from Plaintiff's self-assessment, Capital

23 Group leadership continued to send a series of messages encouraging its employees

24 to speak up, telling them ████████████████████████

25 ████████████████████████

26     96.

27

28

COMPLAINT

1    ███████████████████████

2    97.    Faced with Capital Group's efforts to cover up his complaint of

3    discrimination and taking to heart the representations made by Capital Group's

4    CEO, Timothy Armour, and its Chairman, Robert Lovelace, that employees should

5    speak up against discrimination and other concerns, ████████████████████

6    ██  ████████  ██  ██████  ██  ██████  ██  ██████  ██████  ██

7    ██████████████████████████████████████████████████

8    ████████

9    98.    Both Armour and Lovelace were based in California.

10    99.    Indeed, Capital Group continued to encourage its employees to raise

11    concerns, such as Plaintiff's, telling all employees to ██████████████████

12    ████████████

13    100.    However, once again, Capital Group purported to take Plaintiff's

14    concerns seriously, but did nothing substantive.

15    101.    Capital Group assigned two other Human Resources officers, Jill Farrel

16    and Michael Green, also based in California, to review Ritter's investigation.

17    102.    Yet, other than reading Plaintiff's memorandum, Farrel and Green did

18    not endeavor to investigate Plaintiff's concerns.  They did not meet with Plaintiff or

19    ask him to directly address any reasons provided by Condon for his behavior.

20    103.    ██████████████████████████████████████████

21    ████████████████████████████████████████████████

22    ████████████    ████████████████████████████████████

23    ████████████████████████████████████████████████

24    ████████████████████████ Ex. 15.)

25    104.    In response, Plaintiff sent a strongly worded, but respectful and

26    professional email, ████████████████████████████████████

27    ████████████████████████████████████████████████

28

19

COMPLAINT

████████████████████████████████████████████████████████

████████████████████████████████    ██████████████████

████████████████████████, Ex. 16.)

105.   Plaintiff followed Capital Group's stated policies by making good faith internal complaints to the appropriate individuals.  None of Plaintiff's efforts to have his concerns properly investigated and addressed interfered with Capital Group's business activities.  Throughout the time he was raising concerns about discrimination, Plaintiff continued to perform his job at a high level.

## VI.   Capital Group Terminates Plaintiff Because He Opposed Discrimination

106.   On September 7, 2022, Capital Group scheduled a meeting with Plaintiff.

107.   At the meeting were Helen Bullock, a human resources officer for Capital Group and Jeff Sterner, Plaintiff's then direct supervisor.  Mr. Sterner appeared at the meeting over Webex from California.

108.   Sterner told Plaintiff that Capital Group was terminating his employment.

109.   Sterner specifically told Plaintiff that the termination was because he "did not accept" the results of Capital Group's investigation.

110.   In other words, Capital Group expressly terminated Plaintiff because Plaintiff maintained concerns about being the victim of national origin discrimination and did not simply accept Capital Group's conclusion that no such discrimination took place.

111.   Capital Group told Plaintiff the termination would be effective at the end of the calendar year, but that Plaintiff was not required to return to work.

112.   In connection with its termination of Plaintiff, under Swiss Law,

1  Capital Group was required to submit a work certificate.

2  113.  ███████████████████████████████████

3  ███████████████████████████

4  █████████████████████████████████████████

5  ███████████████████████████ █████████████████

6  █████████████████████████████████████████

7  █████████████████████████████████████████

8  ██████████ ██ ██ ██ ███ ██ ██ ██ ██ ███ ██

9  ███████████████████████████████████ ██

10  █████████████████████████████████████████

11  ████████████

12  ███████████████████, Ex 17.)

13  114.  ███████████████████████████████████

14  █████████████ ███████████████████████████

15  ████████████

16  115.  Since being told he was fired, Plaintiff has diligently pursued other

17  employment, including looking for work in places far-removed from Switzerland.

18  116.  However, because of Plaintiff's age and narrow specialization, Plaintiff

19  remains unemployed to this day.

20  117.  In addition to the catastrophic financial consequences Capital Group's

21  termination has caused, the entire ordeal has put enormous strain on Plaintiff's

22  family life and has caused him significant emotional distress.

23  118.  Left with no other options, Plaintiff is forced to proceed to litigation.

24  119.  In prelitigation correspondence, Capital Group has not denied that it

25  discriminated against Plaintiff and retaliated against him.  Capital Group has only

26  claimed that Plaintiff has no legal protections under California law.

27  120.  Because Capital Group is mistaken, Plaintiff brings this lawsuit.

28

# FIRST CAUSE OF ACTION
### Violation of FEHA - Retaliation
### California Government Code, § 12900 *et seq.*
### (Against All Defendants)

121.  Plaintiff incorporates by reference the allegations contained in paragraphs 1 - 120 and each and every part thereof with the same force and effect as though fully set forth herein.

122.  Capital Group Companies Global and The Capital Group Companies, Inc. each employ more than five people, and are thus covered entities under the California Fair Employment and Housing Act ("FEHA"), California Government Code, § 12900 *et seq.*

123.  For purposes of Plaintiff's employment, Capital Group, including both Capital Group Companies Global and The Capital Group Companies, Inc., was an integrated enterprise, exhibiting interrelation of operations, common management, centralized control of labor relations, and common ownership and financial control.

124.  Thus, for purposes of FEHA, Plaintiff was an employee of both Capital Group entities for the duration of time he worked for Capital Group.

125.  California Government Code § 12940(a), makes it unlawful for an employer "because of…national origin… to bar or discharge the person from employment…or to discriminate against the person in compensation or in terms, conditions, or privileges of employment."

126.  California Government Code § 12940(k) makes it unlawful for an employer "to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring."

127.  California Government Code § 12940(h) further makes it unlawful for an employer "to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part."

128.   Plaintiff's good faith internal complaints that he was the victim of national origin discrimination and that Capital Group had failed to adequately investigate his allegations of national origin discrimination constituted protected activity under FEHA.

129.   Capital Group violated FEHA by failing to promote Plaintiff and then terminating Plaintiff because he engaged in such protected activity.

130.   Capital Group made both the decision not to promote Plaintiff and the decision to terminate his employment in California.

131.   As a result of Capital Group's violations of FEHA, Plaintiff has been passed over for promotion, lost significant compensation (including wages and other compensation, such as participation in Capital Group's profit sharing (Special Compensation Plan or SCP)), been fired, and suffered emotional distress for which he is entitled to recover.

132.   Capital Group's acted with fraud, oppression, and malice.

133.   Plaintiff has exhausted his administrative remedies by filing a FEHA complaint and obtaining a right to sue letter, attached as Exhibits 18 and 19 respectively.

**SECOND CAUSE OF ACTION**
**Violation of FEHA - Discrimination**
**California Government Code, § 12900 *et seq*.**
**(Against All Defendants)**

134.   Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 120, and each and every part thereof with the same force and effect as though fully set forth herein.

135.   Capital Group Companies Global and The Capital Group Companies, Inc. each employ more than five people, and are thus covered entities under FEHA, California Government Code, § 12900 *et seq*.

136.   For purposes of Plaintiff's employment, Capital Group, including both Capital Group Companies Global and The Capital Group Companies, Inc., was an

23

integrated enterprise, exhibiting interrelation of operations, common management, centralized control of labor relations, and common ownership and financial control.

137.   Thus, for purposes of FEHA, Plaintiff was an employee of both Capital Group entities for the duration of time he worked for Capital Group.

138.   California Government Code § 12940(a), makes it unlawful for an employer "because of…national origin… to bar or discharge the person from employment….or to discriminate against the person in compensation or in terms, conditions, or privileges of employment."

139.   Capital Group discriminated against Plaintiff on the basis of national origin and therefore violated FEHA when it repeatedly failed to promote Plaintiff because of his national origin, permitted Thomas Condon to continue to treat Plaintiff with bias and hostility based on his national origin, failed to properly investigate Plaintiff's complaints about Condon, and then terminated Plaintiff for raising such complaints.

140.   Capital Group's conduct evidenced fraud, oppression and malice.

141.   Capital Group made these decisions in California.

142.   As a result of Capital Group's violations of FEHA, Plaintiff has been passed over for promotion, lost significant compensation (including wages and other compensation, such as participation in Capital Group's profit sharing (Special Compensation Plan or SCP)), been fired, and suffered emotional distress.

143.   Plaintiff has exhausted his administrative remedies by filing a FEHA complaint and obtaining a right to sue letter, attached as Exhibits 18 and 19 respectively.

### THIRD CAUSE OF ACTION
**Breach of Contract**
**(Against Capital Group Companies Global)**

144.   Plaintiff re-alleges and incorporates paragraphs 1-120 of the Complaint as if fully stated herein.

145.  Plaintiff's 2019 Employment Agreement, dated January 7, 2019, constituted a binding contract between Plaintiff on the one hand and Capital Group Companies Global on the other hand. (Ex. 2.)

146.  The 2019 Employment Agreement provided that ███████████████ ████████████████████████████████████████████████ ████████████.)

147.  Plaintiff's prior employment was governed by the 2017 Employment Agreement between Plaintiff on the one hand and Capital International Sárl on the other hand. (Ex. 1.)

148.  That agreement provided: ████████████████████████ ██████████████████████████████████████████████████ █████████████████████████████████ (*Id.*)

149.  The Handbook for Associates ████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ████████████ *See* Exs. 5 and 6.)

150.  Capital Group Companies Global breached these terms of Plaintiff's employment when it: (1) discriminated against Plaintiff on the basis of national origin by not promoting him; (2) failed to conduct a good faith investigation of Plaintiff's complaints about national origin discrimination; (3) continued not to promote Plaintiff; and (4) terminated Plaintiff because of his complaint about national origin discrimination and its ensuing "investigation."

151.  As a result of Capital Group Companies Global's breaches of the 2019 Employment Contract, Plaintiff has and will incur substantial damage, including

being passed over for promotion, losing a lucrative job, losing significant compensation (including wages and other compensation, such as participation in Capital Group's profit sharing (Special Compensation Plan or SCP)), and having his otherwise successful career derailed.

## FOURTH CAUSE OF ACTION
### Promissory Estoppel
### (Against All Defendants)

152. Plaintiff incorporates by reference the allegations contained in paragraphs 1 - 120 and each and every part thereof with the same force and effect as though fully set forth herein.

153. For purposes of Plaintiff's employment, The Capital Group Companies, Inc. and Capital Group Companies Global were an integrated enterprise, exhibiting interrelation of operations, common management, centralized control of labor relations, and common ownership and financial control.

154. Capital Group's representations that it would not permit discrimination, would diligently and thoroughly investigate it, and would not retaliate constituted promises by Capital Group not to discriminate against Plaintiff on the basis of national origin and not to retaliate against Plaintiff for raising concerns about national origin discrimination.

155. Capital Group should have reasonably expected these promises of non-discrimination and non-retaliation would induce its employees, including Plaintiff, to come forward with good faith complaints of discrimination.

156. In reasonable reliance of Capital Group's assurances that he would not be retaliated against, Plaintiff raised good faith complaints that he was the victim of national origin discrimination.

157. Capital Group broke its promise to Plaintiff by firing Plaintiff because he claimed to be the victim of national origin discrimination by Capital Group.

158. As a result of Capital Group's broken promise, Plaintiff has lost a

lucrative and rewarding career at Capital Group.

159.   Injustice can be avoided only by holding Capital Group to its promise.

## FIFTH CAUSE OF ACTION
### Wrongful Termination in Violation of Public Policy
### (Against All Defendants)

160.   Plaintiff incorporates by reference the allegations contained in paragraphs 1 – 120 and each and every part thereof with the same force and effect as though fully set forth herein.

161.   For purposes of Plaintiff's employment, The Capital Group Companies, Inc. and Capital Group Companies Global were an integrated enterprise, exhibiting interrelation of operations, common management, centralized control of labor relations, and common ownership and financial control.

162.   Capital Group discharged Plaintiff.

163.   California has a public policy against national origin discrimination in employment, against an employer failing to take steps to prevent it, and in favor of employees raising internal complaints about national origin discrimination and an employer's failure to prevent it, as embodied in Government Code §§ 12940(a), (h), and (k).

164.   Plaintiff's internal complaints about Condon's national origin discrimination and Capital Group's failure to properly investigate and address it were a substantial motivating reason for Capital Group's discharge of Plaintiff.

165.   Plaintiff has lost a lucrative career, lost significant compensation (including wages and other compensation, such as participation in Capital Group's profit sharing (Special Compensation Plan or SCP)), and suffered emotional distress.

166.   Capital Group's discharge of Plaintiff was a substantial factor in causing this harm.

167.   Capital Group acted with fraud, oppression and malice.

# SIXTH CAUSE OF ACTION
### Wrongful Termination in Violation of Labor Code § 1102.5
### (Against All Defendants)

168.  Plaintiff incorporates by reference the allegations contained in paragraphs 1 -120 and each and every part thereof with the same force and effect as though fully set forth herein.

169.   For purposes of Plaintiff's employment, The Capital Group Companies, Inc. and Capital Group Companies Global were an integrated enterprise, exhibiting interrelation of operations, common management, centralized control of labor relations, and common ownership and financial control.

170.   Labor Code 1102.5(b) provides, in relevant part, that:

> An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information…. to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance… if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

171.   Plaintiff disclosed that he faced national origin discrimination and that Capital Group failed to adequately investigate his complaints in his written and oral complaints and communications to Arredondo, Ritter, Armour, Lovelace, Green, and Farrel.

172.   All of the individuals to whom Plaintiff made such complaints and communications had authority over Plaintiff and/or were authorized by Capital Group to investigate, discover and/or correct such violations.

173.   Plaintiff had reasonable cause to believe that his complaints about

discrimination and about Capital Group's failure to investigate disclosed a violation of the law, including California Government Code §§ 12940(a), (h), and (k).

174.   Capital Group terminated Plaintiff's employment.

175.   Plaintiff's disclosure of Condon's discriminatory conduct and disclosure of Capital Group's failure to properly investigate it were substantial motivating factors in Capital Group's decision to terminate Plaintiff's employment.

176.   Plaintiff was harmed by Capital Group terminating his employment, including by losing a lucrative career, losing significant compensation (including wages and other compensation, such as participation in Capital Group's profit sharing (Special Compensation Plan or SCP)), and suffering emotional distress.

177.   Capital Group acted with fraud, oppression and malice.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court enter judgment on behalf of Plaintiff as follows:

1. Entering judgment on behalf of Plaintiff on each Count alleged herein;
2. Awarding compensatory damages in an amount to be proven at trial, including back pay, front pay, lost wages and other compensation, damages for emotional distress and all damages as may be provided by statute;
3. Awarding punitive damages;
4. Awarding attorneys' fees and costs of suit, pursuant to, *inter alia*, Cal. Gov. Code §12965(b); Cal. Labor Code § 1102.5, and any other statutes as may be applicable;
5. Awarding prejudgment and post judgment interest at the prevailing legal rate; and

1    6.  Awarding such other and further relief as the Court may deem just and
2        proper.

4   DATED:  June 28, 2023              WASKOWSKI JOHNSON YOHALEM LLP

6                                      By:  /s/ Seth Yohalem
7                                           Seth Yohalem
                                            (*Pro hac vice* to be applied for)

8   DATED:  June 28, 2023              WUCETICH & KOROVILAS LLP

10                                     By:  /s/ Dimitrios V. Korovilas
11                                          Dimitrios V. Korovilas

12                                     *Attorneys for Plaintiff Christian Tétrault*

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which a right to jury trial exists.

DATED:  June 28, 2023           WASKOWSKI JOHNSON YOHALEM LLP

By:  /s/ Seth Yohalem
Seth Yohalem
(*Pro hac vice* to be applied for)

DATED:  June 28, 2023           WUCETICH & KOROVILAS LLP

By:  /s/ Dimitrios V. Korovilas
Dimitrios V. Korovilas

*Attorneys for Plaintiff Christian Tétrault*

COMPLAINT