UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTIAN TETRAULT,<br><br>        Plaintiff,<br><br>  v.<br><br>CAPITAL GROUP COMPANIES GLOBAL, THE CAPITAL GROUP COMPANIES, INC., and DOES 1 to 10, inclusive,<br><br>        Defendants. | Case No.  2:23-cv-5144-WLH-E<br><br>**ORDER GRANTING DEFENDANTS' [22-1] AND PLAINTIFF'S [27-4] REQUESTS FOR JUDICIAL NOTICE; AND DENYING DEFENDANTS' MOTION TO DISMISS [22]** |

Before the Court are Defendants Capital Group Companies Global, and the Capital Group Companies, Inc.'s (collectively, the "Defendants") Motion to Dismiss (Docket No. 22) (the "Motion"), and Request for Judicial Notice ("Defendants' RJN") (Docket No. 22-1).  Plaintiff Christian Tetrault ("Plaintiff") filed an Opposition brief (the "Opposition")[1] (Docket No. 27) and Request for Judicial Notice ("Plaintiff's RJN") (Docket No. 27-4).  Defendants filed a Reply brief (the "Reply").  (Docket No. 36).  This matter is fully briefed.

---

[1] Plaintiff filed a redacted Opposition with leave from the Court as it contained references to documents that the Court previously ordered to be filed under seal.  (*See* Docket No. 32).  Unless otherwise specified, all references in this Order to Plaintiff's Opposition cite to the redacted Opposition.  (Docket No. 27).

1  On October 11, 2023, the Court found this matter appropriate for decision
2  without oral argument and took this matter under submission. (Docket No. 37).
3  For the reasons stated below, Defendants' RJN and Plaintiff's RJN are
4  **GRANTED**, and Defendants' Motion is **DENIED**.

**I. BACKGROUND**

**A. <u>Factual Background</u>**

Defendants are a global financial services company based in Los Angeles, California. (Compl., Docket No. 1 ¶ 32).[2] Defendants operate several subsidiaries and related entities, which Plaintiff alleges are centrally managed from their California offices. (*Id.*).

Plaintiff is a Canadian citizen who is currently domiciled in Switzerland. (*Id.* ¶¶ 5, 20). Plaintiff was formerly employed by Defendants as a Senior Tax Manager for approximately 12 years. (*Id.* ¶¶ 5, 31).

In approximately 2010, Plaintiff began working at Capital International, Inc., a subsidiary of Defendants located in Irvine, California. (*Id.* ¶ 31). In 2017, Plaintiff transferred offices to Defendants' Geneva, Switzerland office to work for Defendants' foreign entity, Capital International Sárl. (*Id.* ¶ 35).

While working in Geneva, Plaintiff alleges that he reported to supervisors located in California and interacted with California-based employees on a near daily basis. (*Id.* ¶¶ 16, 39, 43). From approximately 2010 to 2020, Plaintiff reported to Thomas Condon ("Condon"), Senior Vice President and Head of Tax and Treasury. (*Id.* ¶¶ 5, 42). Starting in 2020, Plaintiff began reporting to Jeff Sterner ("Sterner"), who also reported to Condon. (*Id.* ¶¶ 16, 39, 43). Both Condon and Sterner are California-based. (*Id.*). From 2019, Plaintiff also oversaw three teams, two of which

---

[2] Plaintiff also filed a redacted Complaint with leave from the Court. (Docket No. 6). Unless otherwise specified, all references in this Order to the Complaint cite to the redacted Complaint. (Docket No. 1).

2

were based in California. (*Id.* ¶ 40). Furthermore, up until the start of the COVID-19 pandemic, Plaintiff traveled to California on annual business trips. (*Id.* ¶ 41).

Plaintiff alleges that despite receiving positive performance reviews and outstanding ratings, Plaintiff was denied a promotion in April 2020 and again in April 2021. (*Id.* ¶¶ 4, 6). Plaintiff further alleges that "over the years" he experienced discrimination from his supervisor Condon, who was biased against non-Americans such as Plaintiff. (*Id.* ¶ 44). Condon "criticized and made fun of Plaintiff's accent, called foreign countries 'weird' and 'backwards,' cut Plaintiff off or belittled him in meetings, subjected Plaintiff to various other indignities and intimidations, and invited Plaintiff to look for a job elsewhere on three separate occasions." (*Id.* ¶ 5). For example, during one incident, Condon compared Plaintiff's accent to contract workers from India stating, "your accent is not as bad as contractors in the IT group." (*Id.* ¶ 44). In another incident, Condon cut Plaintiff off from speaking during a meeting stating, "I am not sure I understand, but I don't need to hear it" allegedly in reference to Plaintiff's accent. (*Id.* ¶ 48).

In 2021, Plaintiff reported the above-mentioned discrimination and Defendants' failure to promote Plaintiff in a letter dated May 20, 2021, to Canise Arrendondo ("Arrendondo"), Defendants' Chief Financial Officer. (*Id.* ¶¶ 8, 74). Defendants initiated an investigation, and assigned Bob Ritter ("Ritter"), a human resources officer based in California. (*Id.* ¶ 76). Plaintiff alleges that the investigation was "unobjective and inadequate" in part due to Plaintiff's lack of involvement in the investigation. (*Id.* ¶ 8). The investigation resulted in a finding of no wrongdoing. (*Id.*). On June 17, 2021, Defendants informed Plaintiff of the results of the investigation via videoconference, in which Defendants' representatives, Ritter and Arrendondo appeared from California. (*Id.*).

Plaintiff continued to express his disappointment with Defendants' investigation. At the end of 2021, Plaintiff included his grievances with the investigation in his year-end company assessment. (*Id.* ¶ 90–91). In response, Ritter

3

met with Plaintiff over two videoconferences held in February 2022, which resulted in Ritter allegedly removing Plaintiff's complaint from his self-assessment. (*Id.* ¶¶ 92–95). Plaintiff then elevated his complaints by sending a letter to Defendants' Chairman, Robert Loveland ("Loveland"), who is located in California. (*Id.* ¶ 96). Defendants assigned two new human resources officers, Jill Farrel ("Farrel") and Michael Green ("Green"), who are also based in California. (*Id.* ¶ 101). Plaintiff alleges that this second investigation was again inadequate as they did not interview him and only relied upon the memorandum from the first investigation. (*Id.* ¶ 102–03).

On September 7, 2022, Defendants scheduled a meeting with Plaintiff, which was attended by Defendants representatives Helen Bullock ("Bullock") and Sterner. (*Id.* ¶ 106–07). Sterner appeared via Webex from California. (*Id.* ¶ 107). Plaintiff alleges that Sterner informed Plaintiff that he was fired because "he did not accept the results of [Defendants'] 'investigation.'" (*Id.* ¶ 13).

### B. Employment Agreements and Employee Handbook

In connection with his 2017 Geneva employment, Plaintiff received an employment letter dated November 25, 2016, (the "2017 Employment Agreement"). (Docket No. 1 ¶ 69–71, Exh. 1). Among other things, the 2017 Employment Agreement stated that Plaintiff's employment would be guided by "the terms of the Handbook for Associates, a copy of which has already been remitted to you, as amended from time to time (the 'Handbook')." (Docket No. 22 at 7). In 2019, when Plaintiff transferred to a different position, Plaintiff received another employment letter dated January 4, 2019, (the "2019 Employment Agreement"). (Docket No. 1 ¶ 145, Exh. 2). The 2019 Employment Agreement specified that other than his new position, "[a]ll other terms and conditions of your employment remain unchanged." (*Id.*).

Defendants maintain different employee handbooks for its United States (the "US Handbook") (*Id.* at Exh. 5) and European (the "European Handbook") employees

4

(*Id.* at Exh. 6). Both handbooks contain Defendants' code of ethics and provisions that discuss Defendants' compliance with equal opportunity employment laws prohibiting discrimination based on national origin and promoting internal reporting of such conduct. (*Id.* at Exh. 5 at 11–12; Exh. 6 at 23). The US Handbook specifies that no employee will be retaliated against for reporting such conduct. (*Id.* at Exh. 5 at 12).

### C. Swiss Employment Action

On November 23, 2022, Plaintiff filed a Request for Conciliation (the "Conciliation") before the République et canton de Genève ("Geneva Labor Court"). (Tunik Decl., Docket No. 22-2, Exh. A). On January 16, 2023, the parties attended a Conciliation Hearing, the purpose of which was to see whether the parties would be amenable to resolving the matter. (*Id.* ¶¶ 4–5). The parties did not reach an agreement. (*Id.* ¶ 5). Plaintiff had three months from the date of the hearing to file an action before the Geneva Labor Court but did not do so. (*Id.* ¶ 5). There is currently no pending litigation involving Plaintiff before the Geneva Labor Court. (Christian Tetrault Decl. ("Tetrault Decl."), Docket No. 27-1 ¶ 3, Exh. A).

### D. Procedural History

On June 28, 2023, Plaintiff filed a Complaint alleging the following six causes of action: (1) retaliation in violation of California Fair Employment and Housing Act ("FEHA"), California Government Code § 12900 *et seq*; (2) discrimination of national origin in violation of FEHA; (3) breach of contract; (4) promissory estoppel; (5) wrongful termination in violation of public policy; and (6) wrongful termination in violation of California Labor Code § 1102.5. (*Id.* ¶ 19). The core of Plaintiff's claims allege that Defendants failed to promote him due to national origin discrimination and then terminated him as retaliation after he complained and refused to accept the results of the investigation into the alleged national origin discrimination. (*Id.* ¶ 2).

On August 28, 2023, Defendants filed in the instant Motion seeking to dismiss all of Plaintiff's claims under Rule 12(b)(6) and concurrently filed Defendants' RJN.

5

(Docket Nos. 22, 22-1).  On September 18, 2023, Plaintiff filed his Opposition and concurrently filed Plaintiff's RJN.  (Docket Nos. 27, 27-4).  On September 29, 2023, Defendants filed their Reply.  (Docket No. 36).

## II. REQUEST FOR JUDICIAL NOTICE

On a motion to dismiss, the Court may consider "only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."  *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012); *see also United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (finding that under the 12(b)(6) standard, "if a district court considers evidence outside of the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment…").  A court "must take judicial notice if a party requests it and the court is supplied with the necessary information."  Fed. R. Evid. 201(c).  That is, the party requesting judicial notice must show that the fact "is not subject to reasonable dispute" because it is either generally known or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (quotation omitted).  Notably, when a court takes judicial notice of a document, it does so not for the truth of the matters asserted, but rather for the fact that the document exists, and that it is publicly available.  *See id.* at 690.  ("[W]hen a court takes judicial notice of another court's opinion, it may do so not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.") (internal quotation marks and citations omitted).

Defendants seek judicial notice of two exhibits attached to the Tunik Declaration.  (Docket No. 22-1, Exhs. A, B).  Exhibit A is a certified copy of the Geneva Labor Court's summons to attend the Conciliation hearing, which was drafted in French and filed in connection with Plaintiff's Request for Conciliation filed on November 23, 2022.  (*Id.* Exh. A).  Exhibit B is a certified English translation of Exhibit A.  (*Id.* Exh. B).  The Court finds it appropriate to take judicial notice of the

above-mentioned exhibits as they are verifiable foreign court records with certified translations. *See, e.g. Lee v. Lee*, No. LACV1908814JAKPVCX, 2022 WL 18278434, at *3 (C.D. Cal. Dec. 1, 2022) (taking judicial notice of foreign court records and certified translations that were verifiable). Accordingly, Defendants RJN is **GRANTED**.

Plaintiff requests that the Court take judicial notice of the following fact: "There is no action pending in the Geneva Labor Court involving Christian Tetrault, the Plaintiff in this action." (Docket No. 27-4 at 2). As support, Plaintiff submits a declaration from Plaintiff, which affixes a letter issued by the Geneva Labor Court confirming that Plaintiff does not have an action pending before it (Exhibit A), and a certified English translation of the letter (Exhibit B). (Docket No. 27-1, Exhs. A, B). Lastly, Plaintiff instructs the Court to review the Tunik Declaration as proof that the Plaintiff did not file any action before the Geneva Labor Court within the required three months following the conciliation. (Docket No. 22-2 ¶ 5). After reviewing Plaintiff's submission, the Court similarly finds it appropriate to take judicial notice of the above-mentioned fact and exhibits for the same reasons the Court stated above in granting Defendants' RJN. Accordingly, Plaintiff's RJN is **GRANTED**.

### III. MOTION TO DISMISS

Under Fed. R. of Civ. P. 12(b)(6), a party may move to dismiss a cause of action for failure to state a claim upon which relief can be granted. A complaint may be dismissed for failure to state a claim for one of two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). To fulfill this requirement, a complaint must meet the notice pleading standards of Rule

8(a). Fed. R. Civ. Proc. 8(a). That is, a complaint "may not simply recite the elements of a cause of action but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Rule 8(a), however, "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence." *Twombly*, 550 U.S. at 545. The court must construe the complaint in the light most favorable to the plaintiff, accept all allegations of material fact as true, and draw all reasonable inferences from well-pleaded factual allegations. *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002). The court is not required to accept as true legal conclusions couched as factual allegations. *See Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

### A. Extraterritoriality of Plaintiff's California State Law Claims

Defendants move to dismiss Plaintiff's first, second, fifth, and sixth causes of action as improper extraterritorial applications of California's state laws. (Docket No. 22 at 4). Specifically, Plaintiff's first, second, and fifth causes of action are brought under FEHA, while his sixth cause of action is alleged under California's Labor Code. Defendants contend that Plaintiff, who did not reside or work in California during the relevant time period, failed to sufficiently allege a nexus between the allegedly tortious conduct and California. (*Id.*).

In general, there is a presumption against the extraterritorial application of California's state laws. *See N. Alaska Salmon Co. v. Pillsbury*, 174 Cal. 1, 4 (1916) ("Although a state may have the power to legislate concerning the rights and

obligations of its citizens with regard to transactions occurring beyond its boundaries, the presumption is that it did not intend to give its statutes any extraterritorial effect."). "The presumption against extraterritoriality is one against an intent to encompass conduct occurring in a foreign jurisdiction in the prohibitions and remedies of a domestic statute." *Diamond Multimedia Sys., Inc. v. Superior Court*, 19 Cal. 4th 1036, 1059–60 (1999). "However far the Legislature's power may theoretically extend, we presume the Legislature did not intend a statute to be 'operative, with respect to occurrences outside the state, unless such intention is clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject matter or history.'" *Sullivan v. Oracle*, 51 Cal. 4th 1191, 1207 (2011) (declining the extraterritorial application of California's Unfair Competition Law) (quoting *N. Alaska Salmon*, 174 Cal. at 4) (internal quotation marks and punctuation omitted). If the presumption against extraterritoriality applies to a particular statute, the court must "consider whether plaintiffs' proposed application of the [law] would cause it to operate, impermissibly, with respect to occurrences outside of the state." *Id.* Because the question of whether a statute applies extraterritorially is statute-specific, the Court will address each statute in turn.

i. FEHA

The California Court of Appeal in *Campbell v. Arco Marine, Inc.*, 42 Cal. App. 4th 1850 (1996), is the highest California court to address FEHA's presumption against extraterritoriality.[3] In *Campbell*, the plaintiff was a Washington state resident, who was employed by a crude oil shipping company based in California. *Id.* The plaintiff alleged several incidents of sexual harassment against a colleague, which occurred on a ship that was out at sea during the time of the incidents, except for one incident, which occurred in Washington. *Id.* at 1858. The court, based on a review of

---

[3] It does not appear that the Ninth Circuit or California Supreme Court has addressed whether FEHA may apply extraterritorially. In the absence of controlling authority, the Court may rely on *Campbell* as persuasive authority.

the statute and its legislative history, concluded that the presumption against extraterritoriality extended to FEHA. *Id.* at 1858–60. In finding against the plaintiff, the court rejected the view that FEHA applies "to all California-based employers regardless of where the aggrieved employee resides and regardless of where the tortious conduct took place." *Id.* at 1859. Specifically, the court found that the plaintiff's "relationship with California [was] slight," and while the company was based in California, "no one in its headquarters participated or ratified the conduct." *Id.* Ultimately, the court held that FEHA was "not intended to apply to non-residents, where… the tortious conduct took place outside of [California's] territorial boundaries." *Id.* at 1852.

Several district courts have since applied *Campbell* extraterritoriality framework. *See, e.g. Stovall v. Align Tech., Inc.,* No. 5:18-CV-07540-EJD, 2020 WL 264402, at *3 (N.D. Cal. Jan. 17, 2020) (finding that a non-California resident employee sufficiently plead FEHA claim even where majority of the discriminatory conduct occurred outside of California because "the ultimate discriminatory action—Plaintiff's termination—was 'directed, overs[een], and ratified' by [defendant's HR employee] from California"); *Sims v. Worldpac Inc.*, No. 12-cv-05275-JSW, 2013 WL 663277, at *1 (N.D. Cal. Feb. 22, 2013) (denying motion to dismiss FEHA claims on basis of extraterritoriality where complaint identified employees engaged in the allegedly discriminatory and retaliatory conduct and specified that they were located in California when they made the decision and plans to terminate plaintiff); *Gonsalves v. Infosys Technologies, LTD.*, No. 09-cv-4112-MHP, 2010 WL 1854146, at *5 (N.D. Cal. May 6, 2010) (dismissing FEHA claims against non-California resident because allegations demonstrating a nexus between his employment or the alleged discrimination and California were "extremely general in nature"). Notably, *Stovall*, *Sims*, and *Gonsalves* all involved employees who resided and worked outside of California but alleged that the decision to terminate them (i.e., the alleged

discrimination) was ratified by individuals located in California. *Stovall*, 2020 WL 264402, at *3; *Sims*, 2013 WL 663277, at *3–4; *Gonsalves*, 2010 WL 1854146, at *6.

In *Stovall* and *Sims*, the courts denied a motion to dismiss on the grounds of an exterritorial application of FEHA, because each plaintiff's allegations were sufficiently alleged, at the pleading phase, to demonstrate that the tortious conduct supporting FEHA claims occurred in California. *Stovall*, 2020 WL 264402, at *3 ("At the pleading stage, Plaintiff's allegations, although thin, are sufficient to state cognizable claims under California law"); *Sims*, 2013 WL 663277, at *3–4 ("The Court finds that Sims' allegations are more specific than the allegations in either *Campbell* or *Gonsalves*, and are sufficient, at the pleading phase, to establish that the allegedly tortious conduct supporting his FEHA claims occurred in California"). Specifically, both plaintiffs identified the individuals involved in the alleged discrimination including the decision to terminate the plaintiff and alleged that these individuals were in California when they made that decision. *Stovall*, 2020 WL 264402, at *3; *Sims*, 2013 WL 663277, at *3–4. For example, in *Sims*, an employee alleged that he was terminated because of his unfavorable testimony during a deposition in a case brought against his employer by another employee. *Sims*, 2013 WL 663277, at * 1. He further alleged that after he testified, the employee's supervisors called him from California to inform the employee that he had to relocate to another state in order to keep his job. *Id.* Despite relocating, the employee was terminated and replaced by a younger employee. *Id.* The employee alleged that his supervisors "made the decision to terminate him in California and made all the arrangements relating to the termination in California." (*Id.*). The *Sims* court found these allegations were sufficient to survive a motion to dismiss.

Contrastingly, in *Gonsalves*, the court granted a defendant's motion to dismiss because the plaintiff only made general allegations that his employer maintained personnel in California such as executives, attorneys, and human resources personnel who "instituted, approved, ratified, affirmed and/or implemented the discriminatory

11

policies" that ultimately led to plaintiff's injuries. *Gonsalves*, 2010 WL 1854146, at *6 ("If California-based employees participated in or ratified the alleged tortious conduct, the complaint must so state with specificity so that the Court can determine if these actions are sufficient to state a claim under FEHA") (quoting *Dodd–Owens v. Kyphon, Inc.*, 2007 WL 410191, at *3 (N.D. Cal. Feb. 5, 2007)).

Despite the differing outcomes, all three matters stand for the general proposition that FEHA may extend extraterritorially to non-California residents if the discriminatory conduct at issue occurred in California. *See, e.g. Gonsalves*, 2010 WL 1854146 at *5 (relying on *Campbell* to find that extraterritorial application of FEHA was not improper if complaint pled that "the discriminatory conduct occurred in California."). As such, the Court must examine the nexus between California and the allegedly discriminatory conduct and determine if the Plaintiff sufficiently identified the individuals who engaged in discriminatory conduct from California.

Here, Plaintiff's FEHA claim stems from the allegation that Defendants failed to promote Plaintiff due to national origin discrimination and then terminated him in retaliation when Plaintiff reported this discrimination. (Docket No. 1 ¶ 129). Plaintiff alleges several facts demonstrating Plaintiff's nexus to California including (1) Defendants are a California-based company; (2) Plaintiff managed two teams of employees located in California; (3) Plaintiff visited California for work trips on an annual basis up until the pandemic; and (4) Defendants' employees including senior management, supervisors, and human resource officers, who alleged did not promote and then terminated Plaintiff were physically located in California during the relevant time period. (*See* Docket No. 1 ¶¶ 16, 32, 39–43, 130, 141). Notably, none of the first three factors are dispositive to the Court's analysis. In fact, *Campbell* rejected the view that FEHA applies "to all California-based employers regardless of where the aggrieved employee resides and regardless of where the tortious conduct took place."). *Campbell*, 42 Cal. App. 4th at 1852. Likewise, performing some work in California including managing teams and taking business trips to California is

insufficient on its own to extend FEHA's extraterritorial reach. *See, e.g. Gonsalves*, 2010 WL 1854146, at *5 (granting motion to dismiss FEHA claims where non-California resident employee's California based job duties such as managing California based clients and traveling to the state was insufficient on its own to implicate FEHA's extraterritorial reach). Instead, the critical factor is where the discriminatory acts—i.e., the failure to promote and terminate Plaintiff occurred. As *Stovall*, *Sims*, and *Gonsalves* illustrate, at the pleading stage, the Plaintiff must allege at a minimum, the identity and location of the individuals who participated in the failure to promote Plaintiff due to his national origin and then subsequently decided to terminate Plaintiff in retaliation. *Sims*, 2013 WL 663277, at *3–4 (finding plaintiff's allegations identifying individuals involved in decision to terminate were located in California were "sufficient, at the pleading phase, to establish that the allegedly tortious conduct supporting his FEHA claims occurred in California.").

Plaintiff has alleged sufficient facts, at the pleading stage, which state a cognizable claim under FEHA. Plaintiff alleges that, while Condon was located in California, Condon engaged in allegedly discriminatory conduct related to Plaintiff's national origin. (Docket No. 1 ¶¶ 43–59). Further, on June 17, 2021, Ritter and Arredondo participated from California in an online meeting where they informed Plaintiff of Defendants' findings of no wrongdoing and that the matter "was closed and that he should not raise the issue again." (*Id.* at ¶¶ 81, 86). Then on September 7, 2022, Defendants scheduled a virtual meeting with Plaintiff where Sterner appeared virtually from California to terminate Plaintiff and inform him that the reason was because Plaintiff "'did not accept' the results of Capital Group's investigation." (*Id.* ¶¶ at 106–10). Like the plaintiff in *Stovall* and *Sims*—and unlike the plaintiff in *Gonsalves*—Plaintiff has sufficiently alleged the identity of the individuals in California directly involved in the alleged discrimination, retaliation, and wrongful termination of Plaintiff. *See, e.g. Sims*, 2013 WL 663277, at *3–4 (finding that allegations that supervisor and human resources officer were located in California

13

when discriminatory act of deciding to terminate and ultimately terminating Plaintiff was sufficient). Although Plaintiff repeats the same somewhat conclusory allegation in its first and second cause of action that "Capital Group made both the decision not to promote Plaintiff and the decision to terminate his employment in California," reading this allegation in conjunction with the entire Complaint as discussed above is sufficient at this stage of the case to demonstrate that the discriminatory conduct occurred in California. (Docket No. 1 ¶¶ 130, 141). Accordingly, the Court **DENIES** Defendants' Motion to the extent that it relies upon the theory of an improper extraterritorial application of Plaintiff's FEHA claims.

### ii. *California Labor Code § 1102.5*

California Labor Code § 1102.5(b) provides in relevant part: "An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency...." Nothing in the plain language of the statute or its legislative history indicates that it was intended to apply extraterritorially. *See Sullivan*, 51 Cal. 4th at 1207 ("[T]he presumption against extraterritoriality applies to [Section 1102.5] in full force.").

Defendants repeat the same unavailing extraterritoriality arguments lodged above regarding FEHA about Plaintiff's Labor Code claims. For the same reasons that Plaintiff's FEHA claims survive, so too does Plaintiff's sixth cause of action under the Labor Code. Plaintiff sufficiently alleged, at the pleadings phase, that the discriminatory acts occurred in California. *Compare Leibman v. Prupes*, No. 2:14-CV-09003-CAS, 2015 WL 3823954, at *8 (C.D. Cal. June 18, 2015) (denying motion to dismiss Labor Code § 1102.5 claim because "core decision to wrongfully terminate [plaintiff]" occurred in California) *with Weinberg v. Valeant Pharms. Int'l,* No. 8:15-CV-01260-KES, 2017 WL 6543822, at *6 (C.D. Cal. Aug. 10, 2017), *aff'd sub nom. Weinberg v. Valeant Pharms. N. Am., LLC*, 765 F. App'x 328 (9th Cir. 2019) (granting

motion to dismiss Labor Code § 1102.5 claim because plaintiff failed to allege any nexus between plaintiff and California other than working on computer infrastructure located in state). Accordingly, the Court **DENIES** Defendants' Motion to the extent that it relies upon the theory of an improper extraterritorial application of Plaintiff's Labor Code claims.

### B. Breach of Contract

Plaintiff's breach of contract claim is predicated on Defendants' violations of the anti-discrimination and retaliation provisions contained in their employee handbook. Under California law, the elements of a cause of action for breach of contract are (1) the existence of a contract; (2) the pleading party's performance or excuse for nonperformance; (3) the nonpleading party's breach; and (4) damages. *See Reichert v. Gen. Ins. Co. of Am.*, 68 Cal.2d 822, 830 (1968). Defendants move to dismiss Plaintiff's claim for breach of contract on the grounds that Defendants' employee handbook cannot form the basis of a contract. (Docket No. 22 at 7).

Plaintiff's breach of contract claim alleges that the pertinent contract is Plaintiff's 2019 Employment Agreement, which incorporates by reference his 2017 Employment Agreement and Defendants' employee handbook. (Docket No. 1 ¶¶ 145–49). The 2019 Employment Agreement states that other than changing the entity employing Plaintiff, "all other terms and conditions of your employment remain unchanged" from Plaintiff's 2017 Employment Agreement. (*Id.* at Exh. 2). The 2017 Employment Agreement states that Plaintiff's employment will be guided by the "specific conditions" listed in the 2017 Employment Agreement and "the terms of the Handbook for Associates, a copy of which has already been remitted to you, as amended from time to time (the 'Handbook')." (Docket No. 1 ¶ 69, Exh. 1). Notably, Defendants have both a United States and European Handbook for their employees and neither the 2017 Employment Agreement nor the 2019 Employment Agreement specifies which version of the employee handbook applies. Both of Defendants'

employee handbooks, however, include an anti-discrimination and anti-retaliation provision and form the basis of Plaintiff's breach of contract claim. (Docket 27 at 12).

Defendants challenge Plaintiff's breach of contract claim on the grounds that Defendants' U.S. Handbook cannot form a contract because it states the following two disclaimers: (1) "[t]he Handbook is not intended to be in the nature of a legal contract"; and (2) that "guidelines in this Handbook may change from time to time." (Docket No. 22 at 7–9)[4]. The Court finds both of these arguments unavailing.

As to the first argument, generally, employee handbooks may be contractually binding if properly incorporated into an employment agreement. *See, e.g. Karrer v. Best Buy Co., Inc.*, No. LA CV 11-07697 JAK, 2012 WL 1957586, *3 (C.D. Cal. May 24, 2012) ("[A] company policy, such as that evidenced in a handbook or employer policy memorandum, may give rise to a contract between employer and employee, even absent formal offer and acceptance…."); *see also Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 344 (Cal. 2000)) ("When an employer promulgates formal personnel policies and procedures in handbooks, manuals, and memoranda disseminated to employees, a strong inference may arise that the employer intended workers to rely on these policies as terms and conditions of their employment, and that employees did reasonably so rely.").

While it is true that the existence of a disclaimer in the handbook expressly stating that the handbook is not intended to be a contract precludes the finding of a contractual right on the basis of the handbook *alone*, *see, e.g., Bianco v. H.F. Ahmanson & Co.,* 897 F. Supp. 433, 439–40 (C.D. Cal. 1995) ("An employee handbook which states on its face that it 'is not intended to constitute or create, nor is it to be construed to constitute or create, the terms of an employment contract' cannot

---

[4] Defendants raised a third argument contending that Plaintiff "fail[ed] to plead any facts regarding the duty or duties Plaintiff was to perform under the alleged contract (i.e., Handbook)." (Docket No. 22 at 9). Defendants' argument, however, is one conclusory sentence without any argument. As such, the Court declines to address this claim.

16

be a promise or a commitment to future behavior."), that argument is unavailing here. Here, Plaintiff has alleged that the contractual right at issue comes not from the Handbook alone but from the actual employment agreements themselves, which expressly incorporated the terms contained in the Handbook of Associates. Thus, the fact that the U.S. Handbook expressly states that it "is not intended to be in the nature of a legal contract" is unavailing.

Moreover, the employment agreements at issue in this case are ambiguous as to which handbook for associates governs. The European Handbook, unlike the U.S. Handbook, does not contain any disclaimer regarding its intention or not to be in the nature of a legal contract.[5] The Complaint refers to the "Handbook for Associates" and attaches both the US Handbook and European Handbook. (Docket No. 1 ¶ 148–49). As Plaintiff correctly points out, any ambiguity as to which handbook applies, must be held against Defendants because as the drafter of the agreements and handbooks, they caused the ambiguity. *United States v. Seckinger*, 397 U.S. 203, 216 (1970) (when there are "two reasonable and practical constructions of an ambiguous contractual provision… the provision should be construed less favorably to that party which selected the contractual language."). Furthermore, this ambiguity is a question of fact that may not be properly decided at this phase. Accepting Plaintiff's allegations as true, and drawing all reasonable inferences in Plaintiff's favor, the Court concludes that Plaintiff has sufficiently alleged at the pleading stage that a contract exists.

---

[5] Defendants assert that it is contradictory for Plaintiff to simultaneously argue that his breach of contract claims are governed by an employee handbook for European employees, while claiming that the same discrimination is covered by FEHA and the Labor Code. (Docket No. 36 at 13). This argument is unpersuasive as it conflates the limitations of extraterritoriality with principles of contract law. Further, at the pleadings stage, a plaintiff may plead contradictory or inconsistent positions. *See Molsbergen v. U.S.*, 757 F.2d 1016, 1019 (9th Cir.1985) (holding that a party may plead inconsistent claims under the Federal Rules of Civil Procedure 8(d)(3) and that those claims must be analyzed independently).

Defendants also contend that the U.S. Handbook's disclaimer that "guidelines in this Handbook may change from time to time" vitiates any agreement because Defendants have the discretion to make unilateral changes or modifications to the terms of the handbook. (Docket No. 22 at 8). Defendants rely solely on one case, *Scheller v. Interstate Realty Mgmt.*, 2014 WL 2918879 (E.D. Cal. June 24, 2014) for the proposition that an employee handbook containing the above-mentioned provision indicates the lack of an intention to form a contract. In *Scheller*, the disclaimer clearly and explicitly stated that the company had the sole discretion to unilaterally change any or all the policies in its handbook with or without any prior notice. *Scheller*, 2014 WL 2918879, at *7. Based on the plain language of the handbook, the *Scheller* court found that "no reasonable person could have objectively interpreted the handbook as a contract." *Id.* This case is factually distinguishable from *Scheller*. In the present case, the U.S. Handbook states under a section referring to the "at-will nature" of Plaintiff's employment, in relevant part "[a]lthough other guidelines in this Handbook may change from time to time, no one is authorized to alter or modify *this section* or the *at-will nature* of the employment relationship, either expressly or by implication, except in a specific written agreement." (Docket No. 1, Exh. 5 at 13) (emphasis added). Unlike in *Scheller*, the disclaimer does not explicitly apply broadly to the entire handbook, but rather only the section related to Plaintiff's "at-will" employment. This language does not provide a clear and explicit intention that the parties did not intend mutuality as to the entire agreement. Accordingly, to the extent that Plaintiff's breach of contract claim is based on Defendants' employee handbooks, the Court **DENIES** Defendants' Motion.

**C. Concurrent Swiss Action**

Defendants argue that this matter should be dismissed as being barred as *re judicata* because Plaintiff filed a concurrent employment matter in Geneva Labor Court in Geneva, Switzerland. (Docket No. 22 at 9–10). Defendants further contend that by filing a concurrent action, Plaintiff concedes that his employment is governed

18

by Swiss and not California law. The parties dispute, however, whether Plaintiff's filing of a Conciliation constitutes the initiation of a legal action, which would warrant the baring of this matter.

As discussed *infra*, Section II., the Court took judicial notice of Plaintiff's Affidavit and supporting documentation indicating that Plaintiff does not have any matters pending before the Geneva Labor Court. Furthermore, Defendants' own affidavit states that Plaintiff decided not to proceed by filing a matter within the required time. (Docket No. 22-2 ¶ 5). Both parties' affidavits also indicate that the Conciliation focused on Plaintiff's lack of overtime and holiday pay, which are different issues than those before this Court. (Docket No. 22-2 ¶ 3); (*see also* Decl. of Raphael Faure ("Faure Decl."), Docket No. 27-2 ¶ 14). Lastly, as Plaintiff indicates, Defendants failed to identify any "exceptional circumstances" regarding whether this court must exercise jurisdictional deference to a parallel foreign proceeding. *Neuchatel Swiss Gen. Ins. Co. v. Lufthansa Airlines*, 925 F.2d 1193, 1194 (9th Cir. 1991). Taking all the factual allegations in the Complaint and judicially noticed materials as true, the Court **DENIES** Defendants' Motion to the extent that it argues that this matter is barred by any concurrent Swiss action.

### D. Promissory Estoppel

Under California law, the elements of promissory estoppel are "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *U.S. Ecology, Inc. v. State*, 129 Cal. App. 4th 887, 901, 28 Cal. Rptr. 3d 894 (2005) (internal citation omitted). Defendants contend that Plaintiff's promissory estoppel claim fails for the same reasons Plaintiff's breach of contract claim is improper—namely, that the employee handbooks cannot form the basis of any promise because of the above-discussed disclaimer clause and Defendants' ability to unilaterally modify the handbook. (Docket No. 22 at 12).

Here, Plaintiff alleges that Defendants' promise included Defendants' representation that they "would not permit discrimination, would diligently and thoroughly investigate it, and would not retaliate…." (Docket No. 1 ¶ 154). The Court finds that the same allegations supporting the existence of a contract similarly support the existence of a clear and unambiguous promise. *See, e.g. Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 792 (9th Cir. 2012) (vacating dismissal of promissory estoppel claim because plaintiffs' promissory estoppel and breach of contract claims were subject to the same definiteness requirement and court had already "concluded that the alleged contract is sufficiently definite to survive a motion to dismiss"). Accordingly, the Court denies Defendants' Motion as to the promissory estoppel claims.

## IV. CONCLUSION

For the reasons stated above, Plaintiff and Defendants' concurrently filed Requests for Judicial Notice are **GRANTED**, and Defendants' Motion is **DENIED**.

**IT IS SO ORDERED.**

Dated: January 17, 2024

HON. WESLEY L. HSU
UNITED STATES DISTRICT JUDGE