

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTIAN TETRAULT,<br><br>Plaintiff,<br><br>v.<br><br>CAPITAL GROUP COMPANIES ET AL,<br><br>Defendant. | Case No. 2:23-cv-05144-WLH-JPR<br><br>**ORDER RE MOTION FOR SUMMARY JUDGMENT [126]** |

Before the Court are cross-motions for summary judgment filed by Plaintiff Christian Tetrault ("Plaintiff") and Defendants Capital Group Companies Global et al. (collectively, "Capital Group"). (Joint Motion for Summary Judgment ("Mot."), Dkt. 126). Plaintiff moves for partial summary judgment as to liability on his third cause of action for breach of contract and sixth cause of action for retaliation in violation of California Labor Code § 1102.5. Defendants move for summary judgment on all claims asserted in the Complaint, or, in the alternative, for partial summary judgment on several independent grounds. The court heard oral argument on July 8, 2025.

For the reasons explained below, the Court **DENIES** the cross-motions for summary judgment.

1  I.    **BACKGROUND**

2      A.    **Factual Background**

3      Plaintiff Christian Tetrault ("Plaintiff") brings this action against his former

4  employer, Capital Group, asserting claims for discrimination, retaliation, wrongful

5  termination and breach of contract arising out of his employment and eventual

6  termination from Capital Group's Geneva, Switzerland office.  (Complaint, Dkt. 1

7  ¶¶ 10–16).

8      Plaintiff is a Canadian citizen and native French speaker who was hired by

9  Capital Group Companies, Inc. on December 6, 2010, as a Senior Tax Manager in

10  Private Markets.  (JAF ¶ 1).  In January 2017, Plaintiff transferred to Capital

11  International Sárl and began working out of Geneva, Switzerland, at his own request.

12  (JAF ¶ 2).  From 2019 through the end of his employment, Plaintiff was employed by

13  Capital Group Companies Global and lived and worked in Geneva, where he was

14  subject to Swiss labor laws.  (JAF ¶¶ 5–6).

15      Although Plaintiff lived abroad, several of his key supervisors, including Tom

16  Condon and Canise Arredondo, were based in California and played central roles in

17  performance evaluations, investigations into Plaintiff's complaints and the ultimate

18  decision to terminate his employment.  (JAF ¶¶ 13, 34, 43).  Plaintiff submitted two

19  internal complaints to Capital Group regarding alleged discriminatory and retaliatory

20  conduct, the first in May 2021 and the second in April 2022, both of which were

21  escalated to senior leadership.  (JAF ¶¶ 31, 41).  Capital Group conducted internal

22  investigations into each complaint and reaffirmed its initial finding that the allegations

23  were unsubstantiated.  (JAF ¶ 39).

24      On September 7, 2022, Capital Group informed Plaintiff that his employment

25  would be terminated effective December 31, 2022.  (JAF ¶ 43).  The stated reasons

26  included Plaintiff's refusal to accept the findings of the internal investigations and his

27  pursuit of overtime claims under Swiss law.  (JAF ¶ 43).  On November 23, 2022,

28

1  Plaintiff filed a request for conciliation with the Geneva Labor Court seeking remedies

2  under Swiss law.  (JAF ¶ 8).

3       **B.    Procedural Background**

4       Plaintiff filed the Complaint on June 28, 2023, asserting six causes of action:

5  (1) retaliation in violation of the California Fair Employment and Housing Act

6  ("FEHA"); (2) discrimination in violation of FEHA; (3) breach of contract;

7  (4) promissory estoppel; (5) wrongful termination in violation of public policy; and

8  (6) retaliation in violation of California Labor Code § 1102.5.  (Complaint, Dkt. 1).

9       On May 9, 2025, the parties jointly filed cross-motions for summary judgment.

10  (Mot., Dkt. 126).  Plaintiff seeks partial summary judgment as to liability on his third

11  cause of action for breach of contract and sixth cause of action under Labor Code §

12  1102.5.  (*Id*.).  Defendants move for summary judgment on all six of Plaintiff's claims

13  or, in the alternative, for partial summary judgment on multiple independent grounds.

14  (*Id*.).  The parties also filed a Joint Appendix of Facts, Objections and Evidence in

15  connection with their motions.  (Dkts. 127–129).

16  **II.    DISCUSSION**

17       **A.    Legal Standard**

18       Summary judgment is appropriate where "there is no genuine dispute as to any

19  material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

20  P. 56(a).  "The substantive law determines which facts are material; only disputes over

21  facts that might affect the outcome of the suit under the governing law properly

22  preclude the entry of summary judgment."  *Nat'l Ass'n of Optometrists & Opticians v.*

23  *Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*,

24  477 U.S. 242, 248 (1986)).  A dispute about a material fact is "genuine" if the

25  evidence is such that a reasonable jury could return a verdict for the nonmoving party.

26  Anderson, 477 U.S. at 248.

27       The moving party bears the initial burden of establishing the absence of a

28  genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If

1    the moving party meets its initial burden, the opposing party must then set forth

2    specific facts showing there is a genuine issue for trial. *Anderson*, 477 U.S. at 248–

3    49.  A party cannot defeat summary judgment based solely on the allegations or

4    denials of the pleadings, conclusory statements, or unsupported conjecture.

5    *Hernandez v. Spacelabs Med.*, Inc., 343 F.3d 1107, 1112 (9th Cir. 2003).  Summary

6    judgment must be granted "against a party who fails to make a showing sufficient to

7    establish the existence of an element essential to that party's case, and on which that

8    party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  "Where the

9    record taken as a whole could not lead a rational trier of fact to find for the nonmoving

10   party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith*

11   *Radio Corp.*, 475 U.S. 574, 587 (1986).

12       "If the nonmoving party produces direct evidence of a material fact, the court

13   may not assess the credibility of this evidence nor weigh against it any conflicting

14   evidence presented by the moving party." *T.W. Elec. Serv., Inc. v. Pac. Elec.*

15   *Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  Inferences may be drawn from

16   underlying facts that are either not in dispute or that may be resolved at trial in favor

17   of the nonmoving party, but only if they are "rational" or "reasonable" and otherwise

18   permissible under the governing substantive law. *Id*.  The court must view all

19   evidence and justifiable inferences "in the light most favorable to the nonmoving

20   party." *Id*. at 630–31.

21       **B.    Analysis**

22       Before the Court are cross-motions for summary judgment filed by Plaintiff and

23   Capital Group. The Court organizes its analysis consistent with the structure of the

24   parties' Joint Brief and addresses the following issues in turn: (1) whether Plaintiff

25   may pursue claims under California law given his residence and employment in

26   Switzerland; (2) whether Defendants are entitled to summary judgment on Plaintiff's

27   national origin discrimination claim; (3) whether the parties are entitled to summary

28   judgment on Plaintiff's retaliation claims under FEHA and Labor Code § 1102.5;

1  (4) whether Plaintiff's contract claims survive summary judgment; and (5) whether

2  Plaintiff's request for punitive damages may proceed.

3      *1. **Applicability of California Law***

4      Defendants move for summary judgment on the ground that Plaintiff's claims

5  under California law, including claims under the Fair Employment and Housing Act

6  ("FEHA"), are barred because Plaintiff lived and worked in Switzerland during the

7  relevant time period.

8      California courts have recognized that the FEHA does not apply

9  extraterritorially to conduct that occurs wholly outside the state and lacks a sufficient

10  nexus to California.  *Campbell v. Arco Marine, Inc*., 42 Cal. App. 4th 1850, 1860

11  (1996) (holding that the FEHA does not apply to nonresidents where "the tortious

12  conduct took place out of this state's territorial boundaries").  The Campbell court

13  emphasized that the FEHA was intended to protect "the citizenry of this state" and

14  cautioned against expansive applications that would raise constitutional concerns

15  under the Commerce Clause and Due Process Clause.  *Id*.  Federal courts applying

16  California law have distinguished cases like Campbell, however, where the allegedly

17  unlawful employment decisions were made in California, even if the employee was

18  stationed elsewhere.  *Eng v. Gen. Dynamics Mission Sys., Inc*., 2019 WL 2619658, at

19  *7 (C.D. Cal. May 8, 2019), aff'd, 808 F. App'x 529 (9th Cir. 2020).

20      Defendants argue that California law does not apply because Plaintiff lived and

21  worked in Switzerland, signed a Swiss employment contract and initiated legal

22  proceedings in Switzerland for unpaid overtime.  (JAF ¶¶ 2, 5, 7–8).  The undisputed

23  evidence, however, also shows that Capital Group decisionmakers, including Tom

24  Condon and Canise Arredondo, were based in California (JAF ¶ 178), and that

25  decisions relating to his termination were made by Capital Group leadership in

26  California.  This connection is sufficient to bring the alleged discriminatory and

27  retaliatory conduct within the reach of California's employment laws.

28      Defendants also argue that Plaintiff is judicially estopped from invoking

1  California law because he previously sought relief under Swiss law by filing a

2  complaint for unpaid overtime.  (JAF ¶ 8).  Plaintiff disputes this characterization,

3  asserting that he merely filed a "Request for Conciliation" with the Geneva Labor

4  Court, which is a pre-suit mediation proceeding required under Swiss law to preserve

5  his rights, and that no judicial ruling or adjudication occurred.  (JAF ¶¶ 8, 164; Faure

6  Decl. ¶¶ 5–6, 8, 12–14).

7      Judicial estoppel is an equitable doctrine that prevents a party from gaining an

8  advantage by asserting inconsistent positions in separate proceedings.  *New*

9  *Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001).  Courts generally consider three

10  non-exclusive factors: (1) whether the party's later position is "clearly inconsistent"

11  with its earlier one; (2) whether the party succeeded in persuading a court to accept

12  the earlier position, creating a risk of inconsistent determinations; and (3) whether the

13  party would derive an unfair advantage or impose an unfair detriment on the opposing

14  party if not estopped.  *Id*.

15      Here, there is a factual dispute about the nature of Plaintiff's filing in

16  Switzerland and whether it amounted to a legal position "clearly inconsistent" with his

17  claims in this case.  It is undisputed that the Swiss proceeding resulted in no ruling or

18  judicial acceptance of Plaintiff's position.  Without a prior judicial determination or

19  clear inconsistency in legal position, the doctrine of judicial estoppel does not apply.

20      Accordingly, the Court **DENIES** summary judgment on these grounds.

21      *2. National Origin Discrimination Claim*

22      Defendants move for summary judgment on Plaintiff's claim for discrimination

23  under the Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940(a),

24  arguing that Plaintiff cannot establish a prima facie case of national origin

25  discrimination and, in the alternative, that any adverse actions were based on

26  legitimate, nondiscriminatory reasons.

27      To establish a prima facie case of discrimination under FEHA, a plaintiff must

28  show that: (1) he belongs to a protected class; (2) he was qualified for the position or

1  performing competently in the job; (3) he suffered an adverse employment action; and

2  (4) there is a causal connection between the adverse employment action and his

3  protected classification. *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 355 (2000).  If the

4  plaintiff meets this burden, the employer must articulate a legitimate, non-

5  discriminatory reason for the adverse action.  The burden then shifts back to the

6  plaintiff to demonstrate that the proffered reason is pretextual.  *Id*.

7        It is undisputed that Plaintiff is French Canadian.  (JAF ¶ 4).  Plaintiff also

8  received consistently high performance ratings, including "Outstanding" in each of the

9  final seven years of his employment.  (JAF ¶ 98).  Defendants do not dispute this, but

10  contend that Plaintiff cannot prove a causal connection between his nationality and

11  any alleged adverse employment action.  (Mot. at 25-27).

12        Plaintiff identifies three adverse actions: (1) the failure to promote him to

13  Director, (2) failure to increase compensation, and (3) refusal to "write a role

14  description for Plaintiff reflecting Plaintiff's new role, resulting in a compensation

15  study that did not consider Plaintiff's expanded responsibilities."  (Mot. at 28-29,

16  citing JAF ¶¶ 103-113).

17        Defendants argue that there was no open Director role and that Plaintiff never

18  applied for one. But the record reflects that Director promotions at Capital Group did

19  not require applications.  (JAF ¶ 166).  Two American colleagues were promoted

20  without applying.  *Id*.

21        Plaintiff also offers evidence that Condon, who provided input on Plaintiff's

22  termination (JAF ¶ 53, 178), made remarks suggesting bias, including comments

23  about Plaintiff's accent and referred to foreign countries as "weird" or "backwards."

24  (JAF ¶¶ 91–97).  Defendants argue these were innocuous or out of context, but at

25  summary judgment, the Court must view the evidence in the light most favorable to

26  Plaintiff. (Mot. At 25).  Comments of this nature, when made by a supervisor

27  involved in promotion decisions, may support an inference of discriminatory motive.

28  *See Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1039 (9th Cir. 2005)

7

("….we have repeatedly held that a single discriminatory comment by a plaintiff's

supervisor or decisionmaker is sufficient to preclude summary judgment for the

employer.").

Viewing the evidence in the light most favorable to Plaintiff, there are triable

issues of material fact as to whether Plaintiff was denied a promotion because of his

national origin and whether Condon's remarks reflect discriminatory animus.

Defendants' motion for summary judgment on the national origin discrimination

claim is therefore **DENIED**.

### 3. *Retaliation Under FEHA and California Labor Code § 1102.5*

Both parties move for summary judgment on Plaintiff's retaliation claims under

the Fair Employment and Housing Act ("FEHA") and Labor Code § 1102.5.

To prevail on a FEHA retaliation claim, a plaintiff must show that (1) he engaged in

protected activity; (2) he was subjected to an adverse employment action; and

(3) there was a causal link between the two. *Fisher v. San Pedro Peninsula Hosp.*,

214 Cal. App. 3d 590, 614 (1989).

For retaliation under Labor Code § 1102.5, a plaintiff must establish, by a

preponderance of the evidence, that retaliation for an employee's protected activities

was a contributing factor in a contested employment action. *Rodriguez v. Lab'y Corp.*

*of Am.*, 623 F. Supp. 3d 1047, 1053 (C.D. Cal. 2022). Second, only if Plaintiff has

made the required showing, the burden shifts to the employer to demonstrate, by clear

and convincing evidence, that it would have taken the action in question for

legitimate, independent reasons even had the plaintiff not engaged in protected

activity. *Lawson v. PPG Architectural Finishes, Inc.,* 12 Cal. 5th 703, 718 (2022).

#### a. Protected Activity

Viewing the facts in the light most favorable to Plaintiff, a reasonable jury

could conclude that Plaintiff engaged in protected activity by reporting or opposing

conduct he believed violated FEHA and § 1102.5. Plaintiff identifies three key

actions: (1) his May 20, 2021 letter to Arredondo; (2) his April 21, 2022 letter

1   accusing Arredondo and Ritter of conducting an impartial investigation; and (3) his

2   follow-up email opposing the company's response to his concerns.  (JAF ¶¶ 119–120,

3   135, 144, 176).

4          Defendants contend these letters were focused on "title and pay" and not

5   protected, arguing that "reports of mere improper conduct are insufficient" and that

6   "internal personnel matters involving a supervisor and her employee are not sufficient

7   to support an 1102.5 claim."  (Mot. at 32, citing *Patten v. Grant Joint Union High*

8   *School Dist.*, 134 Cal. App. 4th 1378, 1384–85 (2005); *Rodriguez*, 632 F. Supp. 3d at

9   1055).  Plaintiff, however, argues that each communication explicitly tied

10  compensation concerns unlawful discrimination and that he reasonably believed

11  Capital Group failed to comply with California's legal duty to conduct "a prompt,

12  thorough, and impartial investigation."  (JAF ¶ 168); *American Airlines, Inc. v.*

13  *Superior Court*, 114 Cal. App. 4th 881, 890 (2003).

14         In his May 2021 letter, Plaintiff asserted that he was being denied fair and

15  equitable treatment.  (Joint Appendix of Evidence, Ex. R at 1).  Although the letter

16  does not cite FEHA or refer to national origin, it states the following: "It has been

17  considerably impactful to see my role and contributions being minimized due to

18  certain people's personal interests, discomfort, biases and discrimination.  The

19  treatment that I have received also raises serious concerns of internal equity."  (Joint

20  Appendix of Evidence, Ex. R at 5).  A jury could find that Plaintiff was reporting

21  unlawful retaliation or discrimination, even if his claims were not framed in explicitly

22  legal terms.

23         In his April 2022 letter to Armour and Lovelace, Plaintiff accused Capital

24  Group's leadership of conducting a sham investigation and retaliating against him for

25  raising concerns.  He wrote: "…I have faced the conduct of the Head of Tax &

26  Treasury in the process, with repeated invitations for me to leave CG, discrimination,

27  intimidation, retaliation and deceptive practices, as well as narrow-minded and

28  disingenuous statements made against my interest and the interest of the

9

1    organization." (Joint Appendix of Evidence, Ex. I-38 at 5). Like the earlier letter, this

2    communication does not identify national origin as the basis for alleged bias, but it

3    repeatedly accuses leadership of "retaliation," "bias," and "discrimination."

4         In a June 3, 2022 follow-up email to internal investigators, Plaintiff continued

5    to press his concerns and criticized the integrity of the company's review. He wrote:

6    "The exercise was futile, biased and failed to address the reality. Like the initial

7    investigation, this review was devoid of objectivity, transparency and good faith; it

8    was conducted with conscious disregard of my rights." (Joint Appendix of Evidence,

9    Ex. X at 1). He further stated: "I fully maintain that I have experienced and suffered

10   from internal inequity, discrimination, intimidation and retaliation."

11        Whether Plaintiff's letters in fact disclosed a legal violation or expressed only

12   personnel grievances presents a genuine dispute of material fact. The content and

13   character of these communications must be decided by the jury.

14                  *b. Contributing Factor*

15        Plaintiff has also presented sufficient evidence to raise a triable issue as to

16   whether his protected activity contributed to his termination. Arredondo testified that

17   she did not know whether she would have fired him if he had not sent the letter. (JAF

18   ¶ 160). Internal emails show that Plaintiff's letter was escalated to Arredondo, a

19   subject of his complaints, and that she initiated discussions regarding his termination

20   shortly thereafter. (JAF ¶¶ 155–156). Defendants argue they terminated Plaintiff due

21   to "his inability to accept that his own perceptions about what his title and pay should

22   be did not govern and inability to move forward as a Senior Manager," which led to a

23   "breakdown of trust in his ability to function as a senior leader." (Mot. at 32;

24   Arredondo Depo. 10:1-11:7, 26:12-27:3). Plaintiff disputes this narrative, citing

25   testimony from his supervisor that he remained professional and retained "complete

26   trust" in Plaintiff's work. (JAF ¶ 173). Whether Plaintiff's protected activity

27   contributed to his termination is therefore a factual dispute.

28                  *c. Lawson Burden-Shifting*

1    If Plaintiffs establish a prima facie case under § 1102.5, the burden shifts to

2    Defendants to prove, by clear and convincing evidence, that they would have

3    terminated Plaintiff even absent his protected activity.  *Lawson*, 12 Cal. 5th at 718.

4    This "clear and convincing" standard requires the employer to produce evidence that

5    is "so clear as to leave no substantial doubt" and "sufficiently strong to command the

6    unhesitating assent of every reasonable mind." *Tannehill v. Finch*, 188 Cal. App. 3d

7    224, 228 (1986).

8    Here, Defendants have not carried that burden.  Arredondo's testimony that she

9    "did not know" whether she would have terminated Plaintiff absent the complaints

10    (JAF ¶ 160) falls short of the "clear and convincing evidence" standard.  While

11    Defendants argue that Plaintiff was terminated for legitimate reasons, such as

12    undermining trust, refusing to accept internal findings and violating Swiss labor laws,

13    *Lawson* requires more than just presenting an alternative justification. To prevail at

14    this stage, the employer must show that it would have made the same decision even if

15    Plaintiff had not engaged in protected activity.

16    Arredondo's admission that she is unsure whether she would have fired Plaintiff

17    absent the protected activity undercuts any claim that Capital Group's stated reasons

18    for termination were independent of Plaintiff's complaints.  In light of this record, a

19    reasonable jury could conclude that Capital Group has failed to produce clear and

20    convincing evidence that it would have terminated Plaintiff for reasons unrelated to

21    his protected activity.  The party motions for summary judgment on Plaintiff's

22    retaliation claims are **DENIED**.

23                    *4. **Breach of Contract Claims***

24    Defendants move for summary judgment on Plaintiff's claim for breach of

25    contract, arguing that Plaintiff cannot establish the existence of a binding contract and,

26    even if he could, cannot show breach.  Under California law, the elements of a cause

27    of action for breach of contract are (1) the existence of a contract; (2) the pleading

28    party's performance or excuse for nonperformance; (3) the nonpleading party's breach;

1    and (4) damages.  *Reichert v. Gen. Ins. Co. of Am.*, 68 Cal.2d 822, 830 (1968).

2         *a.  Existence of a Contract*

3       The Plaintiff contends that his 2019 Employment Agreement constituted a

4    binding contract, which incorporated the terms of the 2017 Employment Agreement

5    and Capital Group's Handbooks.  (JAF ¶¶ 85–89).  Defendants argue the Handbooks

6    cannot form the basis of a contract because the U.S. Handbook expressly states that it

7    "is not intended to be in the nature of a legal contract" and "guidelines in this

8    Handbook may change from time to time."  (Mot. at 42–43; JAF ¶¶ 66, 67).  The 2019

9    Employment Agreement states that, aside from the change in employing entity, "all

10   other terms and conditions of your employment remain unchanged" from the 2017

11   Agreement, which expressly incorporates the "Handbook for Associates."  (JAF

12   ¶¶ 85–89).  The US and European Handbooks incorporated Capital Group's Code of

13   Ethics, which also forbade national origin discrimination and retaliation against

14   anyone who reported it.  (JAF ¶ 88).

15      In ruling on Defendants' motion to dismiss on January 17, 2024, the Court

16   found these agreements were "ambiguous as to which handbook for associates

17   governs" and must be held against Defendants as the drafter.  (Docket No. 44 at 18,

18   citing *United States v. Seckinger*, 397 U.S. 203, 216 (1970)).  While that ruling

19   addressed only the adequacy of Plaintiff's allegations, not the sufficiency of evidence,

20   it confirms that a contractual obligation may exist depending on how the agreements

21   and incorporated materials are interpreted.  On this record, and drawing all reasonable

22   inferences in Plaintiff's favor, the Court finds that there is a genuine dispute of

23   material fact as to whether the 2019 Employment Agreement includes the

24   incorporated Handbook provisions and constitutes an enforceable contract.

25        *b.  Breach*

26      Plaintiff contends that Capital Group breached its contractual obligation not to

27   retaliate against employees who raise good-faith complaints of discrimination.  (JAF

28   ¶¶ 86–88, 175–177).  Specifically, Plaintiff points to testimony from Chief Human

1    Resources Officer Gill, who stated that Capital Group's policies prohibit retaliation

2    against employees for: (1) reporting discrimination, (2) challenging the adequacy of

3    an internal investigation, or (3) raising complaints about overtime.  (JAF ¶¶ 175, 177).

4    Gill acknowledged it would have violated policy to terminate an employee for making

5    such complaints.  (JAF ¶ 176).

6        Arredondo, who made the termination decision, testified that Plaintiff's May

7    2021 letter, April 2022 letter, follow-up email and overtime claim were among the

8    "actions that led to his termination."  (JAF ¶ 159).  Defendants dispute that these

9    actions were the true basis for the decision and argue instead that Plaintiff was

10   terminated for persistent dissatisfaction, insubordination and a breakdown of trust.

11   (Mot. at 34).  This dispute is material and genuine. Because a jury could reasonably

12   conclude that Capital Group breached its contractual non-retaliation obligations,

13   summary judgment is not warranted.

             *c.  Promissory Estoppel*

15       Defendants also seek summary judgment on Plaintiff's alternative promissory

16   estoppel theory.  Under California law, promissory estoppel requires: "(1) the

17   existence of a promise, (2) which the promisor reasonably should have expected to

18   induce the promisee's reliance, (3) which actually induces such reliance, (4) that such

19   reliance is reasonable, and (5) that injustice can only be avoided by enforcement of the

20   promise." *Aguilar v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443, 445

21   (9th Cir. 1992).

22       Here, Plaintiff's estoppel claim is based on the same promises contained in the

23   Handbooks, including Capital Group's stated commitments not to retaliate against

24   employees who raise internal concerns.  (JAF ¶¶ 86–88).  At a minimum, there is a

25   triable issue as to whether Plaintiff reasonably relied on these representations in

26   continuing his employment and whether injustice would result from refusing to

27   enforce them.

28       Because the record contains evidence supporting both breach of contract and

13

1   promissory estoppel, summary judgment on this claim is **DENIED**.

2           5. *Punitive Damages*

3           Under California Civil Code § 3294, punitive damages may be awarded "where

4   it is proven by clear and convincing evidence that the defendant has been guilty of

5   oppression, fraud, or malice."  For a corporate employer to be liable, the wrongful

6   conduct must have been committed, authorized, or ratified by an officer, director, or

7   managing agent.  § 3294(b).  "Malice" includes "despicable conduct carried on by the

8   defendant with a willful and conscious disregard of the rights or safety of others," and

9   "oppression" means "despicable conduct that subjects a person to cruel and unjust

10  hardship in conscious disregard of that person's rights."  § 3294(c).

11          Defendants argue that even assuming Plaintiff's claims survive summary

12  judgment, there is no evidence of any conduct by a managing agent that qualifies as

13  oppressive, fraudulent, or malicious under § 3294.  They contend that the alleged

14  conduct is, at most, a standard personnel decision that does not meet the heightened

15  standard for punitive damages.  (Mot. at 47–48).

16          Plaintiff responds that a jury could reasonably find malice or oppression based

17  on Capital Group's internal handling of his complaints and the conduct of its officers.

18  Specifically, Plaintiff points to evidence that: (1) Capital Group "baited" associates to

19  raise concerns, then terminated Plaintiff after he raised concerns about senior

20  leadership (JAF ¶¶ 117–118, 137–139); (2) promised an investigation that would be

21  "objective" and "thorough," but instead designed a sham investigation to reach a

22  "desired outcome" (JAF ¶¶ 121–122); (3) mocked Plaintiff's self-assessment in which

23  he criticized the investigation's legitimacy (JAF ¶¶ 141); (4) forwarded Plaintiff's

24  April 21, 2022 letter to Capital Group CFO Canise Arredondo, a managing agent, to

25  enable retaliation (JAF ¶¶ 147); and (5) assessed the company's legal exposure for

26  retaliation and then proceeded with the termination shortly thereafter (JAF ¶¶ 157).

27          This conduct, if proven, could support a finding of "despicable" treatment in

28  conscious disregard of Plaintiff's rights, particularly given the direct involvement of a

14

1  managing agent.  Courts routinely deny summary judgment on punitive damages

2  where the facts turn on credibility and intent.  *See McInteer v. Ashley Distrib. Servs.*,

3  Ltd., 40 F. Supp. 3d 1269, 1295 (C.D. Cal. 2014); *McCaffrey v. Republic Services*,

4  2025 WL 360745, at *8–9 (N.D. Cal. Jan. 31, 2025)).

5        As the Court stated at the hearing on July 8, 2025, if the jury finds fraud,

6  malice, or oppression, the Court will bifurcate the issue of damages. Accordingly, the

7  Court **DENIES** summary judgment on punitive damages.

8  **III.    CONCLUSION**

9        For the reasons stated above, the Court **DENIES** the parties' cross-motions for

10 summary judgment in their entirety.

11

12

13        **IT IS SO ORDERED.**

14

15 Dated:  August 21, 2025                                    _____
                                                            HON. WESLEY L. HSU
16                                                          UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26

27

28