

UNITED STATES DISTRICT COURT FOR

CENTRAL DISTRICT OF CALIFORNIA

CHRISTIAN TÉTRAULT,

           Plaintiff,

      v.

CAPITAL GROUP COMPANIES GLOBAL, THE CAPITAL GROUP COMPANIES, INC., and DOES 1 to 10, inclusive,

           Defendants.

Case No. 2:23-cv-05144 WLH (Ex)

**JURY INSTRUCTIONS**

Judge:          Hon. Wesley L. Hsu
Trial Date:     Sept. 22, 2025
Action Filed:   June 28, 2023

### **Instruction #1:  Duty of Jury**

Members of the jury: You are the jury in this case. It is my duty to instruct you on the law.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

At the end of the trial I will give you final instructions. It is the final instructions that will govern your duties.

Please do not read into these instructions, or anything I may say or do, that I have an opinion regarding the evidence or what your verdict should be.

**<u>Instruction #2:  Claims and Defenses</u>**

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

The plaintiff, Mr. Christian Tétrault, asserts the following five claims against defendants Capital Group Companies Global and The Capital Group Companies, Inc. (hereinafter referred to collectively as "Capital Group"): 1) retaliation in violation of the Fair Employment and Housing Act, Cal. Gov't Code § 12940(a)(k) and (h) *et seq.*; 2) discrimination in violation of the Fair Employment and Housing Act, § 12940(a); 3) breach of contract; 4) wrongful termination in violation of public policy, and 5); wrongful termination in violation of Cal. Labor Code § 1102.5.

These claims are based on allegations of national origin discrimination and allegations that Mr. Tétrault was retaliated against because of his complaints, which included complaints about discrimination, complaints about the defendants' failure to adequately investigate the alleged discrimination, and complaints about senior individuals at defendants telling him not to complain about national origin discrimination in the future.  Mr. Tétrault has the burden of proving these claims by a preponderance of the evidence.

Capital Group denies each of these claims and also asserts defenses that Mr. Tétrault failed to mitigate his damages and that Capital Group had an independent, legitimate reason for terminating his employment.  Capital Group has the burden of proving its mitigation defense by a preponderance of the evidence.  For the claim to which it applies, Capital Group has the burden of proving its independent, legitimate reason for terminating Mr. Tétrault's employment by clear and convincing evidence.

Mr. Tétrault denies Capital Group's defenses.

1
2
3
4

**<u>Instruction #3:  "Employer" Definition</u>**

5      Mr. Tétrault asserts that both defendants are liable.  For purposes of Mr.

6  Tétrault's claims for retaliation, discrimination, and wrongful termination under

7  California statutory claims, his "employer" is defined as including any business

entity acting as an agent of or on behalf of his employer, directly or indirectly

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

1
2
3

**Instruction #4:  "Single Employer" Integrated Enterprise**

4        Two entities may  be considered a single employer if their operations

5  constitute an integrated enterprise.  This means that their operations are so closely

6  intertwined that they function as a single entity for employment purposes.  Mr.

7  Tétrault contends that the two Capital Group companies constitute an integrated

8  enterprise.  In determining whether both constitute a single employer and are both

9  liable for Mr. Tétrault's claims, you should consider the following four main factors:

10   1.  Interrelation of Operations: You should consider the degree to which the

11        companies' operations are integrated, including shared administrative

12        functions, facilities, and equipment.

13   2.  Common Management: You should consider the presence of the same

14        individuals serving in management roles across the entities and the level of

15        shared decision-making authority and control over daily operations.

16   3.  Centralized Control of Labor Relations: This is often considered the most

17        important factor.  You should assess which entity has the authority to make

18        decisions regarding employment matters such as hiring, firing, discipline, and

19        setting wages and benefits. A higher degree of centralized control over labor

20        relations increases the likelihood of finding an integrated enterprise.

21   4.  Common Ownership or Financial Control: You should consider the extent of

22        shared ownership or financial ties between the entities.

23
24
25
26
27
28

## **Instruction #5:  Corporations and Partnerships—Fair Treatment**

All parties are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you as any party.

**<u>Instruction #6: Liability of Corporations—Scope of Authority Not in Issue</u>**

Under the law, a corporation is considered to be a person. It can only act through its employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.

### **Instruction #7:  Agent and Principal—Definition**

An agent is a person who performs services for another person under an express or implied agreement and who is subject to the other's control or right to control the manner and means of performing the services. The other person is called a principal.

## **Instruction #8:  Agent—Scope of Authority Defined**

An agent is acting within the scope of authority if the agent is engaged in the performance of duties which were expressly or impliedly assigned to the agent by the principal.

1

**Instruction #9:**

**Act of Agent is Act of Principal -- Scope of Authority Not in Issue**

Any act or omission of an agent within the scope of authority is the act or omission of the principal.

### **Instruction #11:  Adverse Employment Action Explained**

Adverse employment actions are not limited to ultimate actions such as termination or demotion. There is an adverse employment action if any individual acting on behalf of the Defendants has taken an action or engaged in a course or pattern of conduct that, taken as a whole, materially and adversely affected the terms, conditions, or privileges of Mr. Tétrault's employment. An adverse employment action includes conduct that is reasonably likely to impair a reasonable employee's job performance or prospects for advancement or promotion. However, minor or trivial actions or conduct that is not reasonably likely to do more than anger or upset an employee cannot constitute an adverse employment action.

**<u>Instruction #12:  Discrimination in Violation of FEHA</u>**

Plaintiff Christian Tétrault claims that Capital Group wrongfully discriminated against him.  Accent discrimination may be a form of national origin discrimination.  To establish this claim, Mr. Tétrault must prove all of the following:

1.  That Capital Group was an employer;

2.  That Mr. Tétrault was an employee;

3.  That Capital Group discharged Mr. Tétrault;

    [or]

    That Capital Group failed to promote Tétrault;

    [or]

    That Capital Group subjected Plaintiff to an adverse employment action;

4.  That Plaintiff Christian Tétrault's protected status of national origin was a substantial motivating reason for Capital Group's decision to discharge Mr. Tétrault and/or decision to refuse to promote him and/or another adverse employment action.

5.  That Mr. Tétrault was harmed; and

6.  That Capital Group's conduct was a substantial factor in causing Plaintiff Christian Tétrault's harm.

**<u>Instruction # 13:  Retaliation in Violation of FEHA</u>**

Plaintiff Christian Tétrault claims that Capital Group retaliated against him because of his internal complaints alleging national origin discrimination and that Capital Group had failed to take all reasonable steps necessary to prevent discrimination and harassment.  To establish this claim, Mr. Tétrault must prove all of the following:

1. That Mr. Tétrault made internal complaints alleging national origin discrimination, <u>and/or</u> that he made internal complaints that supervisors told him not to raise concerns of national origin discrimination again, <u>and/or</u> that he made internal complaints that Capital Group had failed to take all reasonable steps necessary to prevent discrimination and harassment;

2. That Capital Group discharged Mr. Tétrault;
   [or]
   That Capital Group failed to promote Mr. Tétrault;
   [or]
   That Capital Group took other adverse employment action against Mr. Tétrault;

3. That Mr. Tétrault's internal complaints that he was the victim of national origin discrimination, that he was told not to raise such complaints again, <u>and/or</u> that Capital Group had failed to take all reasonable steps necessary to prevent discrimination and harassment were a substantial motivating reason for Capital Group's decision to discharge Mr. Tétrault and/or fail to promote him and/or take other adverse employment action against him;

4. That Mr. Tétrault was harmed; and

5. That Capital Group's decision to discharge and/or fail to promote Mr. Tétrault was a substantial factor in causing him harm.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Mr. Tétrault does not have to prove discrimination or harassment in order to be protected from retaliation. If he reasonably believed that Capital Group's conduct was unlawful, he may prevail on a retaliation claim even if he does not present, or prevail on, a separatee claim for discrimination or harassment.

**Instruction #14:  Wrongful Termination in Violation of Labor Code § 1102.5**

California and/or federal statutes prohibit discrimination on the basis of national origin and require employers to take all reasonable steps necessary to prevent discrimination and harassment. Plaintiff Christian Tétrault claims that Capital Group discharged him in retaliation for his complaints about national origin discrimination, about Capital Group's failure to take all reasonable steps necessary to prevent discrimination and harassment, and about being instructed not to raise such complaints in the future.

To establish this claim, Plaintiff Christian Tétrault must prove all of the following are more likely true than not true:

1. That Capital Group was Mr. Tétrault's employer;

2. That Mr. Tétrault complained about national origin discrimination, about Capital Group's failure to take all reasonable steps necessary to prevent discrimination and harassment, and/or about being instructed not to raise such complaints in the future to a person with authority over him or to an employee with authority to investigate, discover or correct the alleged wrongful activity;

3. That Mr. Tétrault had reasonable cause to believe that the conduct he complained about constituted a violation of a federal or California statute and/or a violation of or noncompliance with a federal, California, or local regulation.

4. That Capital Group discharged Mr. Tétrault;

5. That Mr. Tétrault's complaints were a contributing factor in Capital Group's decision to discharge Mr. Tétrault;

6. That Mr. Tétrault was harmed; and

7. That Capital Group's conduct was a substantial factor in causing Plaintiff Christian Tétrault's harm.

A "contributing factor" is any factor, which alone or in connection with other factors, tends to affect the outcome of a decision. A contributing factor can be proved even when other legitimate factors also contributed to the employer's decision.

Mr. Tétrault must have reasonably believed that the conduct he reported violated federal, state, or local statutes, rules, or regulations.

It is not Mr. Tétrault's motivation for his disclosure, but only the content of that disclosure, that determines whether the disclosure is protected.

A disclosure is protected even though the employer already knew about the information disclosed.

### **Instruction #15:  Wrongful Termination in Violation of Public Policy**

Plaintiff Christian Tétrault claims he was discharged from employment for reasons that violate a public policy. California has a public policy against national origin discrimination in employment, against an employer failing to take steps to prevent it, and in favor of protecting employees raising internal complaints about national origin discrimination and an employer's failure to prevent it.

To establish this claim, Mr. Tétrault must prove all of the following:

1. That Mr. Tétrault was employed by Capital Group;

2. That Capital Group discharged Mr. Tétrault;

3. That Mr. Tétrault's national origin, and/or his internal complaints about national origin discrimination, about Capital Group's failure to properly investigate those complaints, and/or about being instructed not to raise such complaints in the future was a substantial motivating reason for Mr. Tétrault's discharge;

4. That Mr. Tétrault was harmed; and

5. That the discharge was a substantial factor in causing Mr. Tétrault's harm.

**Instruction #16:  Affirmative Defense – Same Decision/Mixed motive**

If Mr. Tétrault proves that his complaints about national origin discrimination, about the company's inadequate investigation of his complaints, and/or about being told not to raise such concerns in the future was a contributing factor to his termination, the Capital Group defendants are not liable under Labor Code § 1102.5 if they prove "by clear and convincing evidence" that they would have discharged Mr. Tétrault anyway at that time for legitimate, independent reasons.

**<u>Instruction #17:  Breach of Contract - Introduction</u>**

Plaintiff Christian Tétrault claims that he and Capital Group entered into a contract for employment, consisting of his Employment Agreement.  The Employment Agreement provided that:

> As an equal opportunity employer, the Group's policy prohibits discrimination on the grounds of sex, marital status, race (including colour, nationality or ethnic origins), disability, age, sexual orientation or religious belief. Discrimination includes, direct, indirect, harassment or victimization. Capital will not knowingly permit victimisation of individuals who report violations of Capital guidelines in good faith.
> …
> The Group is committed to managing diversity to ensure our people are valued and we aim to create an environment that gives every associate the opportunity to use their given talent to their highest potential. Managing diversity involves the basis principle of ensuring we value our people as individuals. We harness individual differences such as sex, marital status, race (including colour, nationality or ethnic origins), disability, age, sexual orientation and religious beliefs to create a productive environment in which organisational goals are met efficiently and effectively by making the best use of everyone's talents and potential.
> …
> All unjustifiable barriers to selection and promotion will be rectified or removed.
> …
> **We are committed to:**
> • ensuring all associates are recruited, trained, developed, internally promoted and compensated according to job-relevant criteria, the associate's ability to perform and their competencies.
> ….
> At Capital, we have no tolerance for any discrimination, harassment or exclusionary practices. Any breach of the guidelines or behaviours not conducive to the success of those will be regarded as misconduct and dealt with accordingly. Any associates who believes a practice or procedure is discriminatory or feels they are being treated unfairly has

a duty to inform their line Manager or Human Resources who will investigate the matter further.

…

The associate, whose case prompted the investigation, shall not suffer any prejudice in his/her professional situation as a result of his/her action, nor face retaliation."

…

There will be no retaliation whatsoever against any associate for raising an issue or concern in good faith.

Mr. Tétrault claims that Capital Group breached this contract by: 1) discriminating against Mr. Tétrault on the basis of national origin by not promoting him and continuing not to promote him; 2) failing to conduct a good faith investigation of Mr. Tétrault's complaints about national origin discrimination; 3) telling him not to raise his concerns again; and/or 4) terminating Mr. Tétrault's employment because of his good faith internal complaints, including his complaints about national origin discrimination, the inadequate investigation and review of that investigation, and efforts to prevent him from raising concerns about national origin discrimination in the future.

Mr. Tétrault also claims that Capital Group's breach of this contract caused harm to Mr. Tétrault for which Capital Group should pay.

Capital Group denies these claims and also asserts that Mr. Tétrault failed to mitigate his damages.

**<u>Instruction # 18: Contract Damages</u>**

If you decide that Mr. Tétrault has proved his claim against Capital Group for breach of contract, you must decide how much money will reasonably compensate Mr. Tétrault for the harm caused by the breach. This compensation is called "damages." The purpose of such damages is to put Mr. Tétrault in as good a position as he would have been if Capital Group had performed as promised. To recover damages for any harm, Mr. Tétrault must prove that when the contract was made, both parties knew or could reasonably have foreseen that the harm was likely to occur in the ordinary course of events as a result of the breach of the contract. Mr. Tétrault also must prove the amount of his damages according to the following instructions. He does not have to prove the exact amount of damages. You must not speculate or guess in awarding damages. Mr. Tétrault claims damages for lost past and future earnings, wages, and benefits, including from lost promotion opportunities.

### **Instruction # 19:  Tort Damages - Liability Contested**

If you decide that Mr. Tétrault has proved one or all of his claims against either Capital Group defendant., you also must decide how much money will reasonably compensate Mr. Tétrault for the harm. This compensation is called "damages."

The amount of damages must include an award for each item of harm that was caused by Capital Group's wrongful conduct, even if the particular harm could not have been anticipated.

Mr. Tétrault does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. However, you must not speculate or guess in awarding damages.

The following are specific items of damages claimed by Mr. Tétrault:

    1.  Past and future lost earnings;

    2.  Emotional distress.

## **Instruction #20:  Past and future lost earnings**

If you find that Capital Group breached a contract with Mr. Tétrault or that Capital Group wrongfully discharged Mr. Tétrault, and/or wrongfully failed to promote or otherwise engaged in adverse employment actions, in violation of FEHA, Labor Code § 1102.5, public policy, or in breach of his employment contract then you must decide the amount of past and future lost earnings that Mr. Tétrault has proven he is entitled to recover, if any. To make that decision, you must:

1. Decide the amount that Mr. Tétrault would have earned up to today, including any benefits and pay increases; and

2. Add the present cash value of any future wages and benefits that he would have earned for the length of time the employment with Capital Group was reasonably certain to continue.

In determining the period Mr. Tétrault's employment was reasonably certain to have continued, you should consider such things as:

(a) Mr. Tétrault's age, work performance, and intent regarding continuing employment with Capital Group;

(b) Capital Group's prospects for continuing the operations involving Mr. Tétrault; and

(c) any other factor that bears on how long Mr. Tétrault would have continued to work.

**<u>Instruction #21:  Emotional Distress Damages</u>**

Mr. Tétrault claims damages for past and future emotional distress.

No fixed standard exists for deciding the amount of these noneconomic damages. You must use your judgment to decide a reasonable amount based on the evidence and your common sense.

To recover for future emotional distress, Mr. Tétrault must prove that he is reasonably certain to suffer that harm.

For future emotional distress, determine the amount in current dollars paid at the time of judgment that will compensate Mr. Tétrault for future emotional distress.

Noneconomic damages should not be further reduced to present cash value because that reduction should only be performed with respect to economic damages.

### **Instruction #22:  Mitigation of Damages**

Capital Group claims that if Mr. Tétrault is entitled to any damages, they should be reduced by the amount that Mr. Tétrault could have earned from other employment. To succeed, Capital Group must prove all of the following:

1. That employment substantially similar to Mr. Tétrault's former job was available to him;

2. That Mr. Tétrault failed to make reasonable efforts to seek this employment; and

3. The amount that Mr. Tétrault could have earned from this employment.

In deciding whether the employment was substantially similar, you should consider, among other factors, whether:

    (a) The nature of the work was different from Mr. Tétrault's employment with Defendants;

    (b) The new position was substantially inferior to Mr. Tétrault's former position;

    (c) The salary, benefits, and hours of the job were similar to Mr. Tétrault's former job;

    (d) The new position required similar skills, background, and experience;

    (e) The job responsibilities were similar; and

    (f) The job was in the same locality.

In deciding whether Mr. Tétrault failed to make reasonable efforts to retain comparable employment, you should consider whether Mr. Tétrault quit or was discharged from that employment for a reason within his control.

If Mr. Tétrault made reasonable efforts to avoid harm, then your award should include reasonable amounts that he incurred, suffered, or spent for this purpose.

**Instruction #23:**

**Damages Arising in the Future - Discount to Present Cash Value**

Any award for future economic damages must be for the present cash value of those damages.

Noneconomic damages such as pain and suffering are not reduced to present cash value.

Present cash value means the sum of money needed now, which, when invested at a reasonable rate of return, will pay future damages at the times and in the amounts that you find the damages will be incurred or would have been received.

The rate of return to be applied in determining present cash value should be the interest that can reasonably be expected from safe investments that can be made by a person of ordinary prudence, who has ordinary financial experience and skill. You should also consider decreases in the value of money that may be caused by future inflation.

## **Instruction #24:  Burden of Proof—Preponderance of the Evidence**

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

**Instruction #25:  Punitive Damages**

**Entity Defendants- Bifurcated Trial (First Phase)**

If you decide that Capital Group's conduct caused Mr. Tétrault harm, you must decide whether that conduct justifies an award of punitive damages. The amount, if any, of punitive damages will be an issue decided later.

At this time, you must decide if either Capital Group Companies Global and/or The Capital Group Companies, Inc.  engaged in conduct with malice, oppression, or fraud.

For you to award punitive damages against Capital Group Companies Global, Mr. Tétrault must prove one of the following by clear and convincing evidence:

1. That the conduct constituting malice, oppression, or fraud was committed by one or more officers, directors, or managing agents of Capital Group Companies Global;

    or

2. That the conduct constituting malice, oppression, or fraud was authorized by one or more officers, directors, or managing agents of Capital Group Companies Global;

    or

3. That one or more officers, directors, or managing agents of Capital Group Companies Global knew of the conduct constituting malice, oppression, or fraud and adopted or approved that conduct after it occurred.

For you to award punitive damages against The Capital Group Companies, Inc., Mr. Tétrault must prove one of the following by clear and convincing evidence:

1. That the conduct constituting malice, oppression, or fraud was committed by one or more officers, directors, or managing agents of The Capital Group Companies, Inc.;

    or

2.  That the conduct constituting malice, oppression, or fraud was authorized
by one or more officers, directors, or managing agents of The Capital
Group Companies, Inc.;

or

3. That one or more officers, directors, or managing agents of The Capital
Group Companies, Inc. knew of the conduct constituting malice, oppression,
or fraud and adopted or approved that conduct after it occurred.

"Malice" means that a defendant acted with intent to cause injury or that a
defendant's conduct was despicable and was done with a willful and knowing
disregard of the rights or safety of another. A defendant acts with knowing disregard
when the defendant is aware of the probable dangerous consequences of the
defendant's conduct and deliberately fails to avoid those consequences.

"Oppression" means that a defendant's conduct was despicable and subjected
Mr. Tétrault to cruel and unjust hardship in knowing disregard of his rights.

"Despicable conduct" is conduct that is so vile, base, or contemptible that it
would be looked down on and despised by reasonable people.

"Fraud" means that a defendant intentionally misrepresented or concealed a
material fact and did so intending to harm Mr. Tétrault.

An employee is a "managing agent" if the employee exercises substantial
independent authority and judgment in corporate decision making such that the
employee's decisions ultimately determine corporate policy.

1

## **Instruction #26: Burden of Proof—Clear and Convincing Evidence**

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the evidence must be so clear as to leave no substantial doubt and sufficiently strong to command the unhesitating assent of every reasonable mind.

## **Instruction #27: What Is Evidence**

The evidence you considered in deciding what the facts are consists of:

1. the sworn testimony of any witness;

2. the exhibits that are admitted into evidence;

3. any facts to which the lawyers have agreed; and

4. any stipulated and admitted facts that I have instructed you to accept as proved.

### Instruction #28:  What Is Not Evidence

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

1. Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2. Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

3. Testimony that is excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.

4. Anything you may heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

## **Instruction #29:  Direct and Circumstantial Evidence**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

## **Instruction #30:  Ruling on Objections**

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

### Instruction #31: Credibility of Witnesses

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1. the opportunity and ability of the witness to see or hear or know the things testified to;

2. the witness's memory;

3. the witness's manner while testifying;

4. the witness's interest in the outcome of the case, if any;

5. the witness's bias or prejudice, if any;

6. whether other evidence contradicted the witness's testimony;

7. the reasonableness of the witness's testimony in light of all the evidence; and

8. any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened.  People often forget things or make mistakes in what they remember.  Also, two people may see the same event but remember it differently.  You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said.  On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

1    The weight of the evidence as to a fact does not necessarily depend on the

2    number of witnesses who testify.  What is important is how believable the witnesses

3    were, and how much weight you think their testimony deserves.

**Instruction #32:  Stipulated and Admitted Facts**

The parties have agreed to several stipulated and admitted facts.  You
must therefore treat these following facts as having been proved:

1.  Christian Tétrault filed his lawsuit in the United States District Court for the
    Central District of California on June 28, 2023.

2.  On December 6, 2010, Defendant The Capital Group Companies, Inc. hired
    Plaintiff Christian Tétrault as a Senior Tax Manager in Private Markets.

3.  In early 2017, Christian Tétrault transferred to Capital International Sárl and
    began working in Geneva, Switzerland as a Senior Tax Manager.

4.  On January 1, 2019, Mr. Tétrault became employed by Capital Group
    Companies Global in the Global Finance Tax Department, as a Global
    Finance Senior Manager, reporting to Tom Condon.

5.  On September 7, 2022, Christian Tétrault was informed of his termination,
    which would not be effective until December 31, 2022.

6.  Christian Tétrault's employment ended on December 31, 2022.

7.  At the time of his termination of employment, Christian Tétrault's title was
    Global Finance Senior Manager in the Global Finance Tax Department.

8.  Christian Tétrault was terminated effective December 31, 2022 and paid his
    base salary through that date.

9.  Canise Arredondo, Tom Condon, Jeff Sterner, Bob Ritter, Timothy Amour,
    Robert Lovelace, Andrea Gill, Jill Farrel, and Michael Green were all
    working and living in California in 2022 and Arredondo, Condon and
    Sterner were all physically located in California when the decision to
    terminate was conveyed to Mr. Tétrault.

## **Instruction #33:  Deposition in Lieu of Live Testimony**

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded.

Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

## **Instruction #34:  2.11 Use of Interrogatories**

Evidence was presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side. These answers were given in writing and under oath before the trial in response to questions that were submitted under established court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

**Instruction #35:  Expert Opinion Testimony**

You have heard testimony from Dr. Brian Kleiner, Aisha Shelton Adam and Dr. Chen Song who testified about their opinions and the reasons for those opinions. This opinion testimony is allowed, because of the specialized knowledge, skill, experience, training, or education of this witness.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it and give it as much weight as you think it deserves, considering the witness's specialized knowledge, skill, experience, training, or education, the reasons given for the opinion, and all the other evidence in the case.

**<u>Instruction #36:  Conflicting Expert Testimony</u>**

 If the expert witnesses disagreed with one another, you should weigh each opinion against the others. You should examine the reasons given for each opinion and the facts or other matters that each witness relied on. You may also compare the experts' qualifications.

1

### **Instruction #37:  Judicial Notice**

2

      The court has decided to accept as proved the fact that the current exchange rate between Swiss Francs and United States Dollars is 1.2545 USD and the exchange rate as of December 31, 2022 was 1.0816 USD.  You must accept this fact as true.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## **Instruction #38:  Experts – Questions Containing Assumed Facts**

The law allows expert witnesses to be asked questions that are based on assumed facts. These are sometimes called "hypothetical questions."

In determining the weight to give to the expert's opinion that is based on the assumed facts, you should consider whether the assumed facts are true.

**Instruction #39:  Charts and Summaries Not Received in Evidence**

      Certain charts and summaries not admitted into evidence may be shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

## **Instruction #40: Charts and Summaries Received in Evidence**

Certain charts and summaries may be admitted into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the testimony or other admitted evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

**Instruction #41:  Evidence in Electronic Format**

Those exhibits received in evidence that are capable of being displayed electronically will be provided to you in that form, and you will be able to view them in the jury room. A computer, projector, printer and accessory equipment will be available to you in the jury room.

A court technician will show you how to operate the computer and other equipment; how to locate and view the exhibits on the computer; and how to print the exhibits. You will also be provided with a paper list of all exhibits received in evidence. You may request a paper copy of any exhibit received in evidence by sending a note through the officer.  If you need additional equipment or supplies or if you have questions about how to operate the computer or other equipment, you may send a note to the officer, signed by your foreperson or by one or more members of the jury. Do not refer to or discuss any exhibit you were attempting to view.

If a technical problem or question requires hands-on maintenance or instruction, a court technician may enter the jury room with the officer present for the sole purpose of assuring that the only matter that is discussed is the technical problem. When the court technician or any nonjuror is in the jury room, the jury shall not deliberate. No juror may say anything to the court technician or any nonjuror other than to describe the technical problem or to seek information about operation of the equipment. Do not discuss any exhibit or any aspect of the case.

The sole purpose of providing the computer in the jury room is to enable jurors to view the exhibits received in evidence in this case. You may not use the computer for any other purpose. At my direction, technicians have taken steps to ensure that the computer does not permit access to the Internet or to any "outside"

website, database, directory, game, or other material. Do not attempt to alter the computer to obtain access to such materials. If you discover that the computer provides or allows access to such materials, you must inform the court immediately and refrain from viewing such materials. Do not remove the computer or any electronic data from the jury room, and do not copy any such data.

1

**Instruction #42:  Party Having Power to Produce Better Evidence**

2

3      You may consider the ability of each party to provide evidence. If a party

4 provided weaker evidence when it could have provided stronger evidence, you may

5 distrust the weaker evidence.

### **Instruction #43:  Duty to Deliberate**

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

### **Instruction #44:  Consideration of Evidence -- Conduct of the Jury**

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations.

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media.  This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial.  If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it, although I have no information that there will be news reports about this case]; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved— including the parties, the witnesses or the lawyers—until you have been excused as

jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over]. If any juror is exposed to any outside information, please notify the court immediately.

### **Instruction #45:  Communication With Court**

      If it becomes necessary during your deliberations to communicate with me, you may send a note through the marshal signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

## **Instruction #46:  Return of Verdict**

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the officer that you are are ready to return to the courtroom.